UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AARON KING,

        Plaintiff,

  v.

EQUIFAX INFORMATION SERVICES, LLC, LEXISNEXIS RISK SOLUTIONS, INC., TRANS UNION, LLC, and EXPERIAN INFORMATION SOLUTIONS, INC.,

        Defendants.

No. C 22-07484 WHA

**ORDER RE MOTION TO DISMISS**

**INTRODUCTION**

In this *pro se* action regarding consumer reporting information, three of four consumer reporting agency defendants move to dismiss all claims under FRCP 12(b)(6). For the reasons below stated, defendants' motion is **GRANTED**.

**STATEMENT**

Defendants are four consumer reporting agencies ("CRAs"): Equifax Information Services, LexisNexis Risk Solutions, Trans Union, and Experian Information Solutions. As laid out in plaintiff's 35-page complaint, this action concerns defendants allegedly associating plaintiff's consumer and credit information with that of another gentleman of the same name. This association began almost 30 years ago, when a different Aaron King ("Louisiana Aaron") filed for bankruptcy in 1997. Over the years, plaintiff was subject to debt collection efforts,

allegedly due to defendants' association of plaintiff's information with that of Louisiana Aaron. Plaintiff disputed the confusion with defendants, including a lawsuit against defendant Equifax that resulted in a settlement agreement in 2008 in which "Equifax agreed to purge the Plaintiff's file, separate the bankrupt [Aaron King]'s information from the Plaintiff, and protect the Plaintiff's file from being re-associated" (First Am. Compl. ¶ 24). Our complaint alleges that from late 2010 through 2017, plaintiff's requested disclosures of his consumer files from all defendants were accurate and showed no associations with other individuals.

During the COVID-19 pandemic in 2020, plaintiff was laid off. Plaintiff alleges that he experienced difficulties in applying for various government benefits, loans, and insurance, such that his online applications were "flat out rejected, or severely delayed," and that plaintiff experienced difficulties verifying his identity online (First Am. Compl. ¶¶ 31–32). The remainder of the complaint details plaintiff's numerous interactions with defendants regarding his various requests for his consumer files. Because Trans Union is a non-movant here, this order need not discuss the factual allegations as to Trans Union.

With regard to LexisNexis, plaintiff's dispute concerns the inclusion of addresses not associated with plaintiff in a disclosure he received upon request, including the address of Louisiana Aaron. Plaintiff also claims that LexisNexis refused to release his requested consumer file disclosure.

With regard to Experian, plaintiff requested a consumer file disclosure which Experian provided in August 2021. The disclosure contained the name "Aaron J. King," which plaintiff alleges is related to Louisiana Aaron. According to plaintiff, Experian had agreed to remove the name "Aaron J. King" from his consumer file in 2005. Plaintiff allegedly received other consumer file disclosures from Experian both before and after August 2021 that were unproblematic (First Am. Compl. ¶¶ 119, 122, 128, 143, 156).

With regard to Equifax, plaintiff's claims stem from multiple online verification incidents. In July 2021, plaintiff requested his consumer file disclosure from Equifax via the federally authorized website AnnualCreditReport.com, and failed the corresponding identity verification challenge questions. The verification process allegedly involved multiple-choice

1    questions provided by Equifax about potential credit transactions asking, for example, who out
2    of four choices provided an auto loan opened in December 2017.  For every prompt, a fifth
3    option, "none of the above," was available.  Our complaint states that plaintiff selected "none
4    of the above" for all questions and failed verification.  Plaintiff claims that both the question
5    and answer options contained information pertaining to Louisiana Aaron.  The same failure of
6    online verification allegedly occurred three more times when plaintiff requested his consumer
7    file disclosure directly from Equifax's website — twice in July 2021, and a third time in
8    August 2021.  Finally, in November 2021, plaintiff requested his consumer file disclosure once
9    more through AnnualCreditReport.com, upon which he failed the challenge questions that
10   contained alleged information for Louisiana Aaron.  Throughout the time of the foregoing
11   incidents, plaintiff was nevertheless able to obtain consumer file disclosures from Equifax via
12   the postal service and telephone, which purportedly contained no inaccuracies (First Am.
13   Compl. ¶¶ 173, 199, 203, 205).

14   In light of the foregoing, plaintiff asserts that the three moving defendants (hereinafter,
15   "defendants") violated three sections of the Fair Credit Reporting Act ("FCRA"), namely 15
16   U.S.C. Sections 1681e, 1681g, and 1681i.  Plaintiff also asserts that defendants violated 42
17   U.S.C. Section 1981, the Equal Credit Opportunity Act ("ECOA"), and 42 U.S.C. Section
18   2000d.  Plaintiff alleges that defendants perpetrated common law fraud by maintaining
19   incorrect consumer information.  Plaintiff separately asserts that Experian violated 15 U.S.C.
20   Sections 1681b and 1681t by using the California Consumer Privacy Act of 2018 ("CCPA") to
21   circumvent the FCRA, and that Equifax is liable in contract for breaching its settlement
22   agreement with plaintiff.

23   Equifax moves to dismiss all claims, joined by Experian and LexisNexis.  In plaintiff's
24   opposition briefing, plaintiff moved for leave to file a proposed First Amended Complaint, and
25   the motion was granted.  Equifax, Experian, and LexisNexis each filed reply briefs addressing
26   the First Amended Complaint.  This order follows full briefing and oral argument.

27
28

3

**ANALYSIS**

To survive a motion to dismiss, plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the party asserting it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory allegations or "formulaic recitation of the elements" of a claim, however, are not entitled to the presumption of truth. *Id*. at 681. Relevant here, "[t]he Supreme Court has directed federal trial courts to read pro se papers liberally." *Christensen v. Comm'r*, 786 F.2d 1382, 1384 (9th Cir. 1986) (citation omitted).

This order will first consider whether plaintiff has sufficiently pled defendants' FCRA violations. It will then address plaintiff's remaining claims, which are largely predicated on the FCRA violations. For the reasons that follow, all claims are hereby dismissed.

1. **FCRA CLAIMS.**

The main problem with plaintiff's arguments is that they require inferences and speculation that are beyond reasonable. As the foregoing facts demonstrate, plaintiff's FCRA claims are based on either information not pertaining to him contained in a disclosure he received, or his failed online identity verification challenge questions. Neither of those situations, as pled in our complaint, are violations of the FCRA.

At the outset, it is worth noting that the Supreme Court has recently explained the difference "between (i) credit files that consumer reporting agencies maintain internally and (ii) the consumer credit reports that consumer reporting agencies disseminate to third-party creditors." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021). This distinction matters, because "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm." *Ibid*. In other words, "in many instances, a plaintiff will not be able to show a concrete injury simply by alleging that a consumer-reporting agency failed to comply with one of FCRA's procedures." *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1115–16 (9th Cir. 2017). That is because "a reporting agency's failure to

4

follow certain FCRA requirements may not result in the creation or dissemination of an inaccurate consumer report." *Ibid.*

The necessary premise of plaintiff's claims is not just that defendants have inaccurate information in his consumer files, but also that this information is reported to "the Online verification processes that relied upon information provided by the Defendants" (First Am. Compl. ¶ 32). However, apart from that lone sentence, plaintiff's complaint does not explain how any "online verification process" implicated information that would be in a disseminated consumer report, let alone what these verification processes were. All this to say: Plaintiff's complaint details purported evidence that there was errant information in his consumer files with defendants. But at core, his claims require further inferential steps, which are that the errant information was disseminated somehow, for some reason, to third parties, which then in turn somehow adversely impacted plaintiff. This order declines to fill in those gaps for plaintiff.

### A.     FCRA Section 1681e.

The foregoing notwithstanding, plaintiff has not plausibly alleged the underlying, specific statutory violations of the FCRA. "To bring a § 1681e claim, the 'consumer must present evidence tending to show that a [CRA] prepared a report containing inaccurate information.'" *Shaw v. Experian Info. Sols. Inc.*, 891 F.3d 749, 755 (9th Cir. 2018) (alteration in original) (quoting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)). Central to defendants' arguments is the distinction discussed earlier, between consumer files and a consumer report. 15 U.S.C. Section 1681a(d) defines a consumer report as follows:

> The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—
> (A)   credit or insurance to be used primarily for personal, family, or household purposes;
> (B)   employment purposes; or
> (C)   any other purpose authorized under section 1681b of this title.

5

1   Or, to summarize: "A consumer, or credit, report is a CRA-prepared report that a CRA *issues*
2   *to third parties for certain qualifying purposes*." *Shaw*, 891 F.3d at 755 n.3 (emphasis added)
3   (citations omitted). This means that not all disclosures by CRAs constitute consumer reports,
4   and that violations of Section 1681e are specific to consumer reports, not just any CRA
5   disclosure.

6   Defendants explain that when consumers request information on themselves, any
7   disclosure is made pursuant to the FCRA's disclosure obligations codified at 15 U.S.C. Section
8   1681g. That section explains that upon request, a consumer reporting agency shall disclose
9   "[a]ll information in the consumer's file at the time of the request," with certain exceptions.
10  15 U.S.C. § 1681g(a)(1). A consumer's "file" on the other hand is defined by 15 U.S.C.
11  Section 1681a(g) as "all of the information on that consumer recorded and retained by a
12  consumer reporting agency regardless of how the information is stored." The FCRA statute
13  thus makes clear that a consumer report and the information disclosed to consumers about their
14  file upon request are not the same thing. *See Tailford v. Experian Info. Sols., Inc.*, 26 F.4th
15  1092, 1101 (9th Cir. 2022). For this reason, plaintiff's Section 1681e claims against
16  defendants are unavailing. Plaintiff alleges the inclusion of information not related to himself
17  in consumer file disclosures provided to him by LexisNexis and Experian. For Equifax,
18  plaintiff merely takes issue with identity verification challenge questions. None of those things
19  are consumer reports as contemplated by the FCRA statute, and are thus not actionable under
20  Section 1681e.

21      **B.**     **FCRA Section 1681g.**

22  Plaintiff also claims that defendants violated 15 U.S.C. Section 1681g. As outlined in the
23  foregoing, Section 1681g contains the disclosure requirements for CRAs which relate to
24  plaintiff's consumer file. For LexisNexis, plaintiff's basis for a violation consists of the
25  allegation that LexisNexis was "refusing to provide the Plaintiff with consumer report [sic]
26  when requested" (First Am. Compl. ¶ 228). However, in addition to the disclosure that
27  plaintiff disputes as inaccurate, our complaint details various other disclosures by LexisNexis
28  in response to plaintiff's requests (First Am. Compl. ¶¶ 44, 45, 51). Those disclosures

6

provided a URL and a pin through which plaintiff could access his "LexisNexis Consumer Disclosure Report" (*Ibid.*; McCabe Decl. Exh. A).  In other words, a nonspecific allegation that LexisNexis refused to provide consumer file disclosures is outweighed by pled facts indicating that LexisNexis did in fact provide such disclosures.  Absent additional facts, plaintiff has not plausibly shown a violation by LexisNexis.

For Experian, the basis for a Section 1681g violation is that Experian provided separate disclosures to plaintiff under the CCPA and the FCRA, which Experian asserts are different types of disclosures.  Plaintiff points to the fact that the CCPA disclosure contained more — and allegedly inaccurate — information as constituting "willful refusal to report all information in the Plaintiff's file at the time of request" (First Am. Compl. ¶ 251).  Experian explains that this is because "the CCPA report . . . includes information required by the CCPA that is not present in Plaintiff's Experian credit file" (Experian Reply 4).  Indeed, plaintiff makes no showing as to why "the information . . . Experian failed to disclose is of the type that has been included in a *consumer report* in the past or is planned to be included in such a report in the future," which is necessary to sustain a Section 1681g violation.  *Tailford*, 26 F.4th at 1102 (emphasis added).  Instead, our complaint details that Experian nevertheless did provide multiple file disclosures that plaintiff found satisfactory (First Am. Compl. ¶¶ 119, 122, 128, 143, 156).  Plaintiff has not plausibly alleged that Experian violated Section 1681g.

For Equifax, plaintiff's Section 1681g claim is a bare statement that Equifax refused to "report all credit related information to the Plaintiff when requested by the Plaintiff under FCRA" (First Am. Compl. ¶ 265).  At best, plaintiff construes his unexplained failure of Equifax's online verification challenge questions as a refusal to provide him requested file disclosures.  However, our complaint nevertheless details multiple such disclosures pursuant to plaintiff's requests that he found unproblematic (First Am. Compl. ¶¶ 173, 199, 203, 205).  Plaintiff therefore does not plausibly allege Equifax's violation of Section 1681g.

### C. FCRA Section 1681i.

Plaintiff's general allegations that defendants failed to reasonably investigate disputed information as required by 15 U.S.C. § 1681i do not pass muster.  "[A] plaintiff filing suit

7

under section 1681i must make a 'prima facie showing of *inaccurate reporting*.'" *Carvalho v. Equifax Info. Servs., LLC*, 615 F.3d 1217, 1230 (9th Cir. 2010) (emphasis added) (quoting *Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1069 (9th Cir. 2008)). As explained in the foregoing sections, plaintiff has not pled that a consumer report on him contained inaccuracies, much less implicated a consumer report in the first place.

This order notes that the statutory text of Section 1681i imposes a reinvestigation obligation when a consumer disputes "the completeness or accuracy of any item of information contained in a *consumer's file* at a consumer reporting agency." 15 U.S.C. § 1681i(a)(1)(A) (emphasis added). Nevertheless, the Supreme Court has held in no uncertain terms that "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm." *Ramirez*, 141 S. Ct. at 2210. Indeed, *Ramirez* merely confirms the practical restraints that courts have applied to temper overbroad readings of the FCRA statute. As an example: "To establish a failure to properly reinvestigate under Section 1681i, Plaintiff must establish that . . . Plaintiff suffered damages as a result of Defendant's conduct." *Huffman v. Experian Info. Sols., Inc.*, No. 19-CV-07408-JSW, 2021 WL 1561304, at *6 (N.D. Cal. Apr. 14, 2021) (Judge Jeffrey S. White). Put another way, plaintiff's "unawareness as to the contents of his credit report at the time of this dispute means he has failed to establish 'his consumer file contained prima facie inaccurate or incomplete information[,]' which is necessary to proceed on this section 1681i(a)(1) claim." *Lopez v. Experian Info. Sols., Inc.*, No. 19-CV-01954-RS, 2022 WL 1569285, at *3 (N.D. Cal. May 18, 2022) (Judge Richard Seeborg) (quoting *Huffman*, 2021 WL 1561304, at *6). As the Ninth Circuit has said when interpreting the FCRA statute, "the word 'file' cannot be given the expansive definition suggested at first glance." *Cf. Tailford*, 26 F.4th at 1101. Any alleged showings of inaccuracy in a plaintiff's file must still be tied to an inaccurate consumer report for there to be a FCRA violation. As explained in the foregoing sections, plaintiff has not pled any inaccurate reporting actionable under the FCRA, and thus his Section 1681i claims against all defendants likewise fail.

In any event, "[l]iability under Section 1681i of the FCRA is predicated on whether the agency's reinvestigation was reasonable." *Huffman*, 2021 WL 1561304, at *6. Our complaint does not contain facts indicating a refusal to investigate or an unreasonable reinvestigation effort as to any defendant. Rather, plaintiff's complaint details either various attempts by defendants to understand what information is being disputed or correspondence with defendants explaining why plaintiff's request could not be processed (First Am. Compl. ¶¶ 38, 43, 47, 49, 146, 152, 216). Moreover, Section 1681i allows CRAs to "terminate a reinvestigation of information disputed by a consumer under that paragraph if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information." 15 U.S.C. § 1681i(a)(3)(A). Absent facts detailing why defendants' efforts and responses were unreasonable, plaintiff fails to state such claims.

### D. FCRA Sections 1681b and 1681t.

Plaintiff additionally alleges claims against only Experian for violations of 15 U.S.C. §§ 1681b and 1681t. Section 1681t addresses preemption, namely "the 'basic rule' governing preemption under the FCRA: Section 1681t(a) preempts state law 'only when compliance with inconsistent state law would result in a violation of the FCRA.'" *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1173 n.35 (9th Cir. 2009) (citation omitted). As detailed above, plaintiff received both CCPA and FCRA disclosures from Experian. Plaintiff provides no basis for how Experian's compliance with separate statutory requirements violated Section 1681t. Instead, plaintiff's complaint in essence asserts that the FCRA required both disclosures to have provided the same information. To the contrary, Section 1681t explicitly contemplates that CRAs must comply with *both* the FCRA and state statutory requirements — such as the CCPA — which may be different. Plaintiff therefore fails to state a Section 1681t violation.

Meanwhile, plaintiff's lone reference to Section 1681b in his complaint is that "Experian is using CCPA to pre-empt FCRA permissible purpose requirements" (First Am. Compl.

¶ 251). Because plaintiff has neither pled any "preemption" violative of the FCRA, nor has he pled that a consumer report was provided for an impermissible purpose, his Section 1681b claim likewise fails.

### 2. DISCRIMINATION CLAIMS.

Building off of the alleged the FCRA violations, plaintiff also alleges that defendants violated the ECOA, 42 U.S.C. Section 1981, and 42 U.S.C. Section 2000d. All three statutes target the prevention of discrimination in credit transactions. Plaintiff asserts that the alleged inaccurate information in his consumer file existed because defendants improperly commingled information of different consumers together based on race (First Am. Compl. ¶ 94, 232, 233, 278). However, this order already finds that FCRA violations for alleged inaccurate information are insufficiently pled. It will not indulge in plaintiff's unpled theories for how the alleged information may have arrived in his consumer file due to discriminatory associations by race, especially when the complaint explains that potentially commingled parties all have the same names.

### 3. FRAUD AND CONTRACT CLAIMS.

Plaintiff's allegations of fraud derive entirely from defendants' FCRA violations. Because the FCRA claims fail, so too do plaintiff's fraud claims.

Finally, plaintiff claims Equifax violated its settlement agreement with plaintiff by re-associating Louisiana Aaron's information with that of plaintiff (First Am. Compl. ¶ 262). According to our complaint, however, this is because he recognized information pertaining to Louisiana Aaron as potential answers in a series of identity verification challenge questions when requesting consumer file disclosures. Equifax disputes that the alleged information contained in challenge questions necessarily pertain to Louisiana Aaron (Equifax Reply 7–8). This order need not address each specific piece of information. The appearance of information which could be relevant to another individual in challenge questions does not automatically suggest that such information is coming from plaintiff's consumer file. As shown in the complaint, these challenge questions present a series of options, including "none of the above." Plaintiff does not explain why he failed certain challenge questions. Plaintiff furthermore does

not assert that he *would have passed* those challenge questions if he instead selected the information he claims is not his. This order declines to speculate. What the complaint does say is that Equifax provided a number of consumer file disclosures to plaintiff that contained no inaccuracies. Taken together, plaintiff has failed to plead a breach of settlement agreement.

## CONCLUSION

For the foregoing reasons, defendants LexisNexis, Experian, and Equifax's motion to dismiss all claims is **GRANTED**. Defendant Trans Union did not join in the motion to dismiss and has instead answered the complaint. This dismissal therefore applies only to LexisNexis, Experian, and Equifax. This action will proceed with respect to Trans Union.

Plaintiff may seek leave to amend his complaint and shall have **TWENTY-ONE CALENDAR DAYS** from the date of this order to file a motion, noticed on the normal 35-day track, for leave to file an amended complaint. Plaintiff must plead his best case in the proposed pleading. Because an amended complaint would completely replace the original complaint, plaintiff must include in it all the claims he wishes to present. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). He may not incorporate material from the original complaint by reference. The proposed amended complaint must be appended to the motion. The motion should explain how the amendments to the complaint cure the deficiencies identified herein, as well as any others raised in defendant's briefs. The proposed complaint will be allowed, if at all, only after a ruling on the motion for leave to file it.

**IT IS SO ORDERED.**

Dated: April 18, 2023.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

11