Aaron King
PO Box 420387
San Francisco, CA 94142
Email: aaron10mail@yahoo.com

Plaintiff in Pro Se


UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| Aaron King, | Case No.: 3:22-cv-07484-WHA |
| Plaintiff, | SECOND AMENDED COMPLAINT<br>- With Descriptions & Corrections |
| v. | For Declarative, Equitable & Injunctive Relief and Damages for Violations of Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, et seq.; 42 U.S.C. § 1981; 42 U.S.C. § 2000d; Fraud; Defamation; Breach of Contract |
| Equifax Information Services, LLC, a foreign company; | |
| LexisNexis Risk Solutions, Inc., a foreign corporation; | |
| Trans Union, LLC, a foreign company; | JURY TRIAL DEMANDED |
| Experian Information Solutions, Inc., a foreign corporation | |
| Defendants | |

**Notice To All Parties Having Concerns In This Matter:**

The Plaintiff, in Propria Persona, upon factual data, information, belief and in good faith, enters the courtroom of the Honourable Judge William Alsup to file this ***Second Amended Complaint*** seeking equitable relief, declarative relief, injunctive relief and monetary damages.

# I. PRELIMINARY STATEMENT

1. The Plaintiff enters the Court seeking relief under Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x (hereafter "FCRA") through injunctive relief, declaratory relief, equitable relief, including statutory and punitive damages for Defendants' ongoing, widespread negligent and willful violations of the FCRA, where each claim is specifically itemized in the Claims for Relief section at the end of this *Second Amended Complaint* (SAC) - With Descriptions & Corrections.

2. Plaintiff seeks relief and damages under 42 USC § 1981, and 42 USC § 2000d for Defendants' practice of using a race-based system of matching consumer information with consumer files resulting in adverse actions in the access to online services such as credit determination, government services, insurance.

3. Plaintiff seeks relief and damages for the ongoing acts of Fraud & Defamation committed by the Defendants as the Defendants were warned in writing that each was engaged in the patterned practice of negligently placing incorrect credit-related information of other consumers on the file of the Plaintiff and reporting incorrect credit-related information to third-parties.

4. Plaintiff seeks relief and damages for Equifax's participation in Breach of Contract which attributed to adverse actions in denial of credit, embarrassment, and humiliation against the Plaintiff whom had an otherwise good credit record.

5. Whereas the Defendants collectively, wilfully and systematically created a system of skip tracing which promoted Defamation, Invasion of Privacy and Harassment upon the Plaintiff while denying, suppressing, and circumventing the right s of the Plaintiff protected by FCRA, state statute, the common-law and/or agreement.

# II. JURISDICTION & VENUE

6. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. §1331. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

7. Federal questions exist: Does California Consumer Privacy Act (CCPA) preempt FCRA procedure in matters of reinstating items which were deleted under FCRA procedure? Does

CCPA preempt FCRA regarding the reporting of credit related information/activity to the consumer?

## III.  PARTIES

8.    Aaron Keith King (hereafter "Plaintiff") is a Black man and resident of California throughout the relevant events of this lawsuit, and a "consumer" within the meaning of 15 U.S.C. § 1681a(c).  The Plaintiff has never filed for bankruptcy protection in any jurisdiction.

9.    Defendant Trans Union, LLC (hereafter "TransUnion") is a "consumer reporting agency" within the meaning of 15 U.S.C. § 1681a(f), a recipient of federal funding, and maintains a consumer file on the Plaintiff.

10.   Defendant Equifax Information Services, LLC (hereafter "Equifax") is a "consumer reporting agency" within the meaning of 15 U.S.C. § 1681a(f), a recipient of federal funding, and maintains a consumer file on the Plaintiff.

11.   Defendant LexisNexis Risk Solutions, Inc. (hereafter "LexisNexis") is a "consumer reporting agency" within the meaning of 15 U.S.C. § 1681a(f), a recipient of federal funding, and maintains a consumer file on the Plaintiff.

12.   Defendant Experian Information Solutions, Inc. (hereafter "Experian") is a "consumer reporting agency" within the meaning of 15 U.S.C. § 1681a(f), a recipient of federal funding, and maintains a consumer file on the Plaintiff.

## IV

## IDENTITY OF PERSONS OF INTEREST WHOM
## ARE NOT PARTY TO THE LAWSUIT

13.   Aaron King, Jr. (also referred to as "AKLou," hereafter "AKJ") is a Black man whom resides on Dalark Drive, a resident of Louisiana, and has filed bankruptcy petitions in 1997,[1]

---

[1] Case number: 97-11283, U.S. Bankruptcy Court for the Middle District of Louisiana. Debtors: Aaron King, Jr. and Rasha P. King.

2003[2] and 2019.[3] Whereas following each bankruptcy filing, when the Plaintiff provided his social security number and requested disclosure from the Defendants, the Defendants provided credit activity (and/or credit-related information) of AKJ, creating the belief that a link exists between the bankrupt AKJ and the Plaintiff's consumer file.

14.  Rasha P. King, aka Rosha King (hereafter "Rosha") is a Black woman, the wife of AKJ[4] resides on Dalark Drive, a resident of Louisiana and the co-debtor with AKJ in the 1997,[5] 2003[6] and 2019[7] bankruptcy filings. Whereas following each bankruptcy filing, when the Plaintiff provided his social security number and requested disclosure from the Defendants, the Defendants provided credit activity (and/or credit-related information) of the bankrupt Rosha, creating the belief that a link exists between the bankrupt Rosha and the Plaintiff's consumer file.

15.  Shan King (hereafter "Shan") is the offspring of AKJ and Rosha, resides on Dalark Drive, and a resident of Louisiana. Whereas following each bankruptcy filing, when the Plaintiff provided his social security number and requested disclosure from the Defendants, the Defendants would provide credit activity (and/or credit-related information) of the Shan creating the belief that a link exists between Shan and the Plaintiff's consumer file.

16.  Aaron X. King (hereafter "AKOhio") is a Black man and a resident of Ohio whose credit related information has been merged with MetLife insurance records of the Plaintiff, and credit related information of the Plaintiff has been merged with the TransUnion consumer file of AKOhio.

17.  Lydia Benitez (hereafter "Benitez") is an Hispanic woman and a resident of Iowa whose credit related information has been merged with the Plaintiff's Experian consumer file.

---

[2] Case number: 03-11139, U.S. Bankruptcy Court for the Middle District of Louisiana. Debtors: Aaron King, Jr. and Rasha P. King.

[3] Case number: 19-11247, U.S. Bankruptcy Court for the Middle District of Louisiana. Debtors: Aaron King, Jr. and Rosha P. King.

[4] According to bankruptcy records on file with U.S. Bankruptcy Court for the Middle District of Louisiana, Aaron King, Jr. and Rosha P. King have been married for over twenty six (26) years, and have resided on Dalark Drive continuously for the duration of that time.

[5] Case number: 97-11283, U.S. Bankruptcy Court for the Middle District of Louisiana. Debtors: Aaron King, Jr. and Rasha P. King.

[6] Case number: 03-11139, U.S. Bankruptcy Court for the Middle District of Louisiana. Debtors: Aaron King, Jr. and Rasha P. King.

[7] Case number: 19-11247, U.S. Bankruptcy Court for the Middle District of Louisiana. Debtors: Aaron King, Jr. and Rosha P. King.

1
2

## V. RELATED CASES

3
4
5

18. In 2006, the Plaintiff (in Pro Per) brought FCRA action against Defendant Equifax in *King v. Equifax, et al.* (2006), cv-06-00275 MJJ, U.S. District Court, Northern District of California, San Francisco Division. and obtained relief.

6
7

19. To set aside the FCRA claims and end the lawsuit, the Plaintiff and Defendant Equifax entered into a *Settlement Agreement*.

8
9
10

20. As a condition of the *Settlement Agreement*, Defendant Equifax agreed to purge the Plaintiff's file, separate the bankrupts' AKJ, Rosha and their family's information from the Plaintiff, and protect the Plaintiff's file from being re-associated.

11
12
13
14

## VI

## NOTICE OF ESSENTIAL ELEMENTS
## REQUIREMENT FOR FRAUD CLAIM

15

### A. Standard for Fraud Claim in California

16
17
18

21. California law places a heightened pleading standard on fraud claims. "In California, fraud must be pled specifically; general and conclusory allegations do not suffice." *Lazard v. Superior Court* (1996) 12 Cal.4th 631, 645.

19
20

### B. Elements of Fraud

21
22
23
24

22. The elements of the tort of fraud require proving: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 974.

25

## VII

26
27

## NOTICE OF ESSENTIAL ELEMENTS
## REQUIREMENT FOR 42 USC § 1981 CLAIM

28

**A. The Notice Standard for 42 USC § 1981 Claims**

23.   The Plaintiff brings a tort claim under Federal Civil Rights statute 42 USC § 1981.

24.   Pursuant the standard required by the Supreme Court in *Comcast Corp. v. National Assn. of African Ameriacan-Owned Media*, No. 18-1171 (Mar. 23, 2020) at the outset of the pleading phase the Plaintiff "must initially plead …  but for race, it would not have suffered the loss of a legally protected right."

25.   Whereas, the legally protected right is the right to make and enforce contracts regardless of race.

26.   To prevail, the Plaintiff typically must prove but-for causation. See *University of Tex. Southwestern Medical Center v. Nassar*, 570 U. S. 338, 347. Whereas the essential elements of a claim remain constant throughout the lawsuit. See, e.g., *Lujan v. Defenders of Wildlife*, 504 U. S. 555, 561.


**B. Defendants' Credit Reporting Practice Tainted Plaintiff's Credit Worthiness Interfering With Making of Credit Contracts**

27.   To bring forth a claim under 42 USC § 1981, the Plaintiff must plead at the outset that the Defendants interfered with the making or enforcement of a contract.

28.   Upon applying for credit, this complaint shows that Defendants Equifax, Experian, TransUnion and Lexisnexis interfered with the making of credit contracts.

29.   As this Complaint illustrates, the Plaintiff applied online for credit with various lenders. As consideration, the Plaintiff provided his social security number to each lender.

30.   As this Complaint illustrates, each lender used the Plaintiff's social security number and sought credit reports (and/or credit scores) online from each respective Defendant.

31.   Based in whole or in part by the online credit-related information provided by the Defendants, each lender denied the Plaintiff's applications and directed the Plaintiff to seek reasons from the Defendants.


**C. The Defendants' Credit File Matching Practice Is Based on Race**

32.   As the Complaint illustrates, from 2003 through 2016, the Plaintiff warned each Defendant to cease linking the Plaintiff's credit information with that of the bankrupt AKJ, bankrupt Rosha, and Shan.

33. Whereas, the race of AKJ, Rosha and Shan is Black.

34. As this Complaint illustrates, the Defendants knew the race of AKJ, Rosha and Shan prior to 2019 for the Plaintiff delivered copies of sheriff's reports to each Defendant showing the race of these persons.

35. As this Complaint illustrates, immediately prior to the 2019 bankruptcy filing, the Plaintiff was under the belief his credit information was not linked to AKJ, Rosha or Shan for the Plaintiff was able to receive loans using his credit information--especially using his social security number.

36. As this Complaint illustrates, Defendants breached duty of care following the bankruptcy filing of 2019 by AKJ and Rosha, whereas the Defendants, in one way or another, linked the credit information of the bankrupts AKJ, Rosha and/or Shan with the credit information of the Plaintiff.

37. As this Complaint illustrates, the Plaintiff was denied credit for the creditors were confused by the online information being reported by the Defendants (cause and injury).

38. As the Complaint illustrates, Defendant TransUnion also linked the credit information of another Black person (AKOhio) to the Plaintiff's MetLife Insurance records, creating confusion and causing an adverse action by MetLife against the Plaintiff.

39. This Complaint illustrates, the Defendants knowlingly ignored differences in social security numbers, differences in names, differences in dates of birth, differences in addresses, differences in bankruptcy status, difference in residency, differences in spending habits, differences in marital status, and opted to <u>match</u> the credit information using race.

40. Following the 2019 bankruptcy, **but for racial animus, the link between the Plaintiff and the other persons (AKJ, Rosha, Shan or AKOhio) would not have occurred and Plaintiff would have had a fair opportunity of being approved for credit.**

## VIII

### NOTICE OF ESSENTIAL ELEMENTS

### REQUIREMENT FOR 42 USC § 2000d CLAIM

EACH DEFENDANT IS A RECIPIENT

OF FEDERAL FUNDING

**A. Each Defendant Receives Federal Financial Assistance**

41.  Refer to aforementioned NOTICE OF ESSENTIAL ELEMENTS REQUIREMENT FOR 42 USC § 1981 CLAIM

42.  The Plaintiff brings a claim under Federal Civil Rights statute 42 USC § 2000d. As a prerequisite to bring forth a claim under 42 USC § 2000d, the Defendant must be a recipient of federal funding and subject person to discriminatory treatment under the activity or program based on protected characteristic.

43.  The U.S. government General Services Administration (GSA) allows persons to perform online searches of the GSA database through the Federal Procurement Data System website at FPDS.gov or SAM.gov to identify entities receiving federal monies.

44.  When the names of the Defendants are run through the FPDS.gov database, it is revealed that each Defendant receives (or has received) money from the U.S. government. The following table shows excerpts resulting from an April 12, 2023 GSA database search:

TABLE T-2

| DEFENDANT | FEDERAL AGENCY PROVIDING FUNDING (year approved) | EXHIBIT(S) |
|---|---|---|
| Equifax | Internal Revenue Service (2019) | **Exhibit** 47-1, bottom cell |
| Equifax | Bureau of the Fiscal Service (2020) | **Exhibit** 47-2, middle cell |
| Equifax | Forest Service (2021) | **Exhibit** 47-4, bottom cell |
| Equifax | Social Security Administration (2022) | **Exhibit** 47-3, top cell |
| Experian | U.S. Marshals Service (2019) | **Exhibit** 47-5, middle cell |
| Experian | Department of Housing & Urban Development (2020) | **Exhibit** 47-7, top cell |

| Experian | Small Business Administration (2021) | **Exhibit** 47-8, middle cell |
|---|---|---|
| Experian | Internal Revenue Service (2022) | **Exhibit** 47-6, top cell |
| LexisNexis | Federal Aviation Administration (2019) | **Exhibit** 48-2, bottom cell |
| LexisNexis | Federal Emergency Management Agency (2020) | **Exhibit** 48-3, top cell |
| LexisNexis | Office of Procurement Operations (2021) | **Exhibit** 48-4, top cell |
| LexisNexis | Internal Revenue Service (2022) | **Exhibit** 48-1, top cell |
| TransUnion | Department of Veterans Affairs (2019) | **Exhibit** 48-6, middle cell |
| TransUnion | U.S. Immigrations & Customs Enforcement (2020) | **Exhibit** 48-6, bottom cell |
| TransUnion | U.S. Attorneys Office (2021) | **Exhibit** 48-8, top cell |
| TransUnion | Department of the Navy (2022) | **Exhibit** 48-7, bottom cell |

## IX. BACKGROUND REGARDING LEXISNEXIS:

*Prior to 2007, Aaron King, J.r and Rosha King Filed for Bankruptcy Twice*

45.  **In 1997,** the bankrupts Aaron King, Jr. (AKJ) and Rosha King (Rosha) filed their first bankruptcy petition.[8]

---

[8]  Case number: 97-11283, U.S. Bankruptcy Court for the Middle District of Louisiana. Debtors: Aaron King, Jr. and Rasha P. King.

46.  **In 2001**, the Plaintiff noticed that information of bankrupts AKJ and Rosha, such as their "Dalark Drive" residential address began appearing on the Plaintiff's Experian consumer file.

47.  **In 2003**, the bankrupts AKJ and Rosha filed a second bankruptcy petition.[9]

48.  Following the 2003 filing, more information (including the "Dalark Drive" address) of bankrupts AKJ, Rosha and their offspring Shan appeared on the Plaintiff's Experian consumer file.

*In 2007, a Debt Collector Identified LexisNexis as a Source for Dalark Drive Address*

49.  Around 2007, LexisNexis was a data mining company known for acquiring and posting bankruptcy information onto consumer files.

50.  Around 2007, during discovery in the lawsuit *King v. Equifax et al.* (2006),[10] debt collector West Asset Management, Inc. (a defendant in the action), identified Defendant LexisNexis (a data mining company at the time) as one of the providers of the "Dalark Drive" address–the primary residence of bankrupts AKJ, Rosha and their offspring Shan.

51.  Whereas the address was attached to Plaintiff's Experian consumer file.

52.  The Plaintiff sent a letter and declaration to LexisNexis notifying LexisNexis that (1) the Plaintiff had <u>not</u> filed for bankruptcy (Plaintiff provided his **social security number**), (2) the Plaintiff was not the bankrupt AKJ, (3) the Plaintiff had never resided at the "Dalark Drive" address and has no association with the people at that address.

53.  In addition, Plaintiff sent a copy of police report from East Baton Rouge Sheriff's Office investigating AKJ and Rosha, copies of Plaintiff's social security card and California ID, and Plaintiff notified LexisNexis that AKJ and his wife Rosha had filed for bankruptcy twice providing case numbers.

54.  Plaintiff asked LexisNexis to correct its files and delete the Plaintiff's identifiers from the information of the bankrupts AKJ, Rosha and the "Dalark Drive" household.

---

[9]  Case number: 03-11139, U.S. Bankruptcy Court for the Middle District of Louisiana. Debtors: Aaron King, Jr. and Rasha P. King.

[10] *King v. Equifax, et al.* (2006), cv-06-00275 MJJ, U.S. District Court, Northern District of California, San Francisco Division.

55. Plaintiff did not receive a response from LexisNexis, so the Plaintiff notified the California Attorney General of this problem.

56. The California Attorney General would not intervene directly and directed the Plaintiff to notify his local police department.

57. Plaintiff sought help through the Alameda County District Attorney's Office **at 1225 Fallon St., Oakland, CA 94612**.

58. After pestering the district attorney's office and providing proof of his identity and other evidence, the District Attorney agreed send a courtesy notice to LexisNexis on the Plaintiff's behalf.

59. The district attorney's office made it clear that they would not mediate, but simply forward the verified identification information to LexisNexis so that it comes from an official agency.[11]

60. Subsequently, the "Dalark Drive" address was deleted (or blocked) from the Plaintiff's Experian consumer file.

61. Since the address was deleted (or blocked) from the Experian file and subsequently did not appear with any other credit reporting agency, the Plaintiff believed that issue was resolved.

*In 2015, Plaintiff's Applications for Credit Were Approved*

62. **On or about July 2015**, because of his efforts to correct his Experian consumer file, the Plaintiff believed his Experian consumer file to be in good condition since Experian reported no associations between the Plaintiff's consumer file and AKJ, Rosha or Shan.

63. **On or about July 16, 2015**, using his social security number, the Plaintiff applied for a short-term loan. After the lender reviewed his application, credentials and credit, the loan was approved.

64. The Plaintiff made timely payments according to the agreement. Whereas the loan and interest were paid in full.

---

[11] The Alameda County District Attorney did not provide a copy of the mailing to the Plaintiff, but the Plaintiff has received evidence from LexisNexis showing LexisNexis received information from the District Attorney. See **Exhibit** 520-12 where LexisNexis has attached the address of the Alameda County District Attorney "1225 Fallon St, Oakland, CA" to the Plaintiff's LexisNexis consumer file.

65.   **On or about September 3, 2015,** using his social security number, the Plaintiff applied for a short-term loan. After the lender reviewed his application, credentials and credit, the loan was approved.

66.   The Plaintiff made timely payments according to the agreement. Whereas the loan and interest were paid in full.

*In 2017, Because Lawsuits Found LexisNexis Responsible for Supplying Incorrect & Unverified Information to CRA's LexisNexis Was Banned From Supplying Public Records Information to the Consumer Reporting Agencies*

67.   **Prior to 2017,** Defendant LexisNexis was not a consumer reporting agency. LexisNexis supplied public record information to TransUnion, Equifax and the Experian consumer reporting agencies.  (see **Exhibits** 30-1, 30-4, 30-5)

68.   What's notable is that although Defendant LexisNexis was a data mining company, LexisNexis did not only gather and disperse public records information to the consumer reporting agencies, LexisNexis maintained the public records information in permanent consumer files just as a consumer reporting agencies.

69.   In a 2017 lawsuit, it was proven that LexisNexis had been consistently supplying incorrect public records information to the consumer reporting agency TransUnion and other CRA's. (see **Exhibit** 30-5)

70.   As part of the settlement agreement, LexisNexis was banned from providing public records information to these consumer reporting agencies.

*In 2017, LexisNexis Began Acting as a Consumer Reporting Agency and Populated Its Consumer Files With Data From Its Files Which Were Already Known to Be Incorrect*

71.   In 2017, since LexisNexis retained permanent public records files on consumers, LexisNexis used these files and began acting as a consumer reporting agency.

72.   LexisNexis had actual knowledge that the public records information it uses was tainted and under the scrutiny of the court. (see **Exhibits** 30-4 & 30-5)

73.   But this did not matter to LexisNexis, for LexisNexis did not purge the files of consumers

and start over. LexisNexis advertised the incorrect information as correct and began acting as a consumer reporting agency.

74. In 2017, the Plaintiff did not know LexisNexis was acting as a consumer reporting agency.

75. In 2017, the Plaintiff did not know LexisNexis was maintaining a file containing incorrect information which linked the Plaintiff to the bankrupt AKJ, bankrupt Rosha, the others residing on "Dalark Drive" in Louisiana. (see **Exhibits** 515-2 through 515-11)

*In 2020 Following the Third Bankruptcy Filing of AKJ and Rosha, LexisNexis Failed to Produce an Electronic Credit Score or an Electronic Consumer Report Upon Request Contributing to Repeated Denials of Credit*

76. **On or about October 23, 2019**, the bankrupts AKJ and Rosha filed their third bankruptcy petition.[12]

77. **On or about March 15, 2020**, the pandemic reached the Plaintiff's geographic location in California. As a result, the Plaintiff was laid-off from work, and government and civilian offices closed to visitors.

78. Because travel restrictions were in place and the closure of business and government office facilities to the public, the Plaintiff was forced to conduct business electronically online.

79. As a safety net to help navigate through the uncertainties of the pandemic, the Plaintiff sought loans and credit from lenders through their electronic application portals.

80. **On or about March 27, 2020**, the Plaintiff used his social security number and applied for credit using American Express electronic application.

81. Whereas, American Express performed a credit check electronically of the Plaintiff's LexisNexis consumer file seeking either a credit score or a consumer report to complete the Plaintiff's credit profile. (see **Exhibit** 515-10 Inquiry Records section)

82. According to American Express, Defendant LexisNexis was given two opportunities to provide credit profile regarding the Plaintiff, but LexisNexis failed (refused) to deliver either an electronic credit score or an electronic consumer report when requested.

83. Based in whole or in part upon the inability of LexisNexis to provide a credit profile, on or

---

[12] Case number: 19-11247, U.S. Bankruptcy Court for the Middle District of Louisiana. Debtors: Aaron King, Jr. and Rosha P. King, husband and wife.

about March 27, 2020 American Express **denied the Plaintiff's application** for credit, and directed Plaintiff to seek information from LexisNexis to explain the adverse action.

*In 2020 Following the Third Bankruptcy Filing of AKJ and Rosha, American Express Provided Statement Showing LexisNexis' Unwillingness to Deliver Credit Scores or Consumer Reports Electronically Upon Request Contributed to the Plaintiff's Denial of Credit*

84. **On or about August 14, 2020**, the Plaintiff used his social security number and applied for credit using American Express electronic application.

85. Whereas, American Express performed an electronic credit check using the Plaintiff's LexisNexis consumer file seeking either a credit score or a consumer report to complete the Plaintiff's credit profile. (see **Exhibit** 515-10 Inquiry Records section)

86. According to American Express, Defendant LexisNexis was given two options to provide credit profile regarding the Plaintiff, but LexisNexis failed (refused) to deliver either an electronic credit score or an electronic consumer report when requested.

87. **Within an August 18, 2020 letter**, American Express states, "We were unable to get your consumer credit score from [LexisNexis]" showing that **LexisNexis refused/failed to provide an electronic credit** score. (see **Exhibit** 50-1 ¶ 2)

88. Since LexisNexis failed to provide an electronic credit score, American Express requested the Plaintiff's consumer report from LexisNexis, and again **LexisNexis refused/failed to provide an electronic consumer report**. (see **Exhibit** 50-1 ¶¶ 3 & 4)

89. **On or about August 18, 2020**, based in whole or in part upon the inability of LexisNexis to provide a credit profile American Express **denied the Plaintiff's application** for credit, and directed Plaintiff to seek information from LexisNexis to explain the adverse action. (see **Exhibit** 50-1 ¶¶ 1, 8 and 9)

*In 2020 Following the Third Bankruptcy Filing of AKJ and Rosha, American Express Provided Statement Showing LexisNexis Continued to Have Problems Delivering Credit Profiles Electronically Upon Request Contributing to the Plaintiff's Denial of Credit*

90. **On or about September 30, 2020,** the Plaintiff asked American Express to reconsider its

decision. Whereas, American Express referred to the previous adverse action.

91.   Based upon the August information, American Express upheld its previous decision.

92.   **This was based upon LexisNexis refusal/failure to provide an electronic credit score**.

93.   This was based upon LexisNexis refusal/failure to provide **an electronic consumer report**.

94.   **On or about September 30, 2020**, based in whole or in part upon the inability of LexisNexis to provide a credit profile American Express **denied the Plaintiff's application** for credit, and directed Plaintiff to seek information from LexisNexis to explain the adverse action.

*Plaintiff Also Experienced Difficulty Obtaining Consumer Disclosure from LexisNexis Whereas LexisNexis Expressed Difficulty Matching Plaintiff's Information With His Consumer File*

95.   **On or about July 17, 2020**, LexisNexis responded to a request for disclosure from the Plaintiff stating,

96.   "Dear Aaron Keith King Thank you for contacting LexisNexis Risk Solutions. We are unable to process your request at this time. Additional identification information is required to process your request. Please complete and mail back the attached form or contact LexisNexis using the information below." (see **Exhibit** 500-2)

97.   **On or about September 27, 2020**, the Plaintiff, using the form provided by LexisNexis, requested a copy of his consumer report through USPS.

98.   **On or about October 12, 2020**, the Plaintiff received a letter directing Plaintiff to use a web site and a PIN to obtain a consumer report. (see **Exhibit** 508-2)

99.   Upon visiting the website a few days later, the Plaintiff entered the PIN and waited for the order to process. The Plaintiff found himself staring at a frozen (and blank) computer screen. The Plaintiff waited, but nothing was delivered. The Plaintiff repeated the process, and received the same result.

100.  **On or about November 3, 2020**, the Plaintiff wrote a letter (sent through USPS) to LexisNexis expressing that LexisNexis did not provide a consumer report. The Plaintiff requested that a consumer report be mailed via USPS. (see **Exhibit** 510-1)

101.  **On or about November 15, 2020**, LexisNexis responded with a letter stating,

102.  "Dear Aaron King … Thank you for contacting us. We are unable to process your California

Consumer Privacy Act Options request at this time.  Conducted a search of our databases based on the information provided to us, but have been unable to locate information sufficiently matching your data. If you have any additional information that would help us find the relevant information, please provide that information to us and we will be happy to conduct additional research." (see **Exhibit** 513-3)

103.  **On or about November 15, 2020**, the Plaintiff used the online portal of LexisNexis and requested consumer reports.

104.  **On or about November 15, 2020**, LexisNexis responded with a letter stating,

105.  "Dear Aaron King … Thank you for contacting us. We are unable to process you California Consumer Privacy Act Report request at this time. We have conducted a search of our databases based on the information provided to us, but have been unable to locate information sufficiently matching your data. If you have any additional information that would help us find the relevant information, please provide that information to us and we will be happy to conduct additional research." (see **Exhibit** 513-11)

106.  After multiple attempts to obtain LexisNexis consumer reports online and through the mail, the Plaintiff was still without a LexisNexis consumer report.

*Following the Difficulty in Obtaining a Consumer Report, LexisNexis Delivered a Consumer Report Through USPS, Whereas  Consumer Report Shows Incorrect Information Linking The Plaintiff to Bankrupts AKJ and Rosha*

107.  **On or about November 28, 2020**, the Plaintiff received a LexisNexis consumer report pursuant FCRA dated  November 19, 2020. (see **Exhibits** 515-2 through 515-21)

108.  **On or about November 28, 2020**, the Plaintiff received a LexisNexis consumer report pursuant CCPA dated  November 19, 2020. (see **Exhibits** 520-2 through 520-21)

109.  Upon inspecting the LexisNexis consumer reports, the Plaintiff noticed that LexisNexis has made the Plaintiff's consumer file a dumping ground for incorrect information where the "Dalark Drive" address is reattached multiple times and the **telephone number** of the bankrupts is visible, thus re-associating the Plaintiff's file with bankrupt AKJ, bankrupt Rosha and the others in their household. (see **Exhibit** 515-6, 515-8, 515-9, 515-10)  even though LexisNexis was provided evidence showing the address does not belong to the

Plaintiff.

110.  Upon viewing the "Dalark Drive" address on his LexisNexis consumer file, the Plaintiff is now worried, distressed and frustrated that he will be pursued and harassed by debt collectors, bounty hunters, and attorneys seeking to put him in jail for "bankruptcy fraud" just as he was pursued and harassed following the 2003 bankruptcy filing of AKJ and Rosha, which forced the *King v. Equifax et al* lawsuit.

111.  Upon further inspection of the LexisNexis consumer reports, the Plaintiff noticed that LexisNexis advertises the "Dalark Drive" address "ruthlessly" on his consumer file.  (see **Exhibit** 515-6, 515-8, 515-9, 515-10)  By advertising the "Dalark Drive" address on the Plaintiff's consumer file, LexisNexis continues to give the false appearance that the Plaintiff resides or resided at the "Dalark Drive" address.

112.  By advertising the "Dalark Drive" address on the Plaintiff's consumer file, the employees of LexisNexis continue to be confused into believing the Plaintiff is bankrupt AKJ, resides at the address, is associated with bankrupt Rosha, and/or has some responsibility to their offspring Shan.


*LexisNexis Continued Having Difficulty Confirming Plaintiff's Identity. Plaintiff Filed Dispute.*

113.  **On or about July 15, 2021**, to get a clearer picture, the Plaintiff ordered a consumer report online under CCPA to see what it would reveal.

114.  **On or about July 15, 2021**, LexisNexis replied,

115.  "We have conducted a search of our databases on the information provided to us, but have been unable to locate information, please provide that information to us and we will be happy to conduct additional research." (see **Exhibit** 562-2)

116.  **On or about October 10, 2021**, the Plaintiff requested a LexisNexis consumer report. On or about October 19, 2021, LexisNexis replied,

117.  "We have conducted a search of our databases on the information provided to us, but have been unable to locate information, please provide that information to us and we will be happy to conduct additional research."  (See **Exhibit** 585-1)

118.  **On October 19, 2021**, the Plaintiff provided a line-by-line dispute to LexisNexis, specifically disputing the "Dalark Drive" address and other incorrect information on the

Plaintiff's LexisNexis consumer file.

119. On or about October 29, 2021 in its response, LexisNexis states,

120. "Thank you for your recent contact to LexisNexis Risk Solutions. Unfortunately, we are unable to authenticate your identity and therefore cannot process your request." (See **Exhibit** 595-1)

121. In its response, LexisNexis did not mention the "Dalark" address or the other adverse information  attached to the Plaintiff's consumer file.

122. The Plaintiff has requested many times, provided SSN and other identifying documents, but LexisNexis continues to play this "game" hinting that it will release a consumer report then it does not.

*The Re-association With Bankrupts AKJ and Rosha Confused and Confounded LexisNexis So Much LexisNexis Could Not Ascertain Whether or Not the Plaintiff Was Bankrupt Aaron King, Jr., Thus Lenders Such as American Express (and the Plaintiff) Were Unable to Obtain Consumer Reports When Requested*

123. Following the 2019 bankruptcy filing by AKJ and Rosha, LexisNexis flooded the Plaintiff's LexisNexis consumer file with incorrect information, especially multiple entries of the "Dalark Drive" address, mixing the Plaintiff's consumer file with the bankrupt AKJ.

124. Upon viewing a LexisNexis consumer report, LexisNexis falsely conclude the Plaintiff resides (or resided) on "Dalark Drive," and is therefore the bankrupt AKJ or somehow responsible for the debt of the Dalark Drive" household.

125. Upon its confusion, LexisNexis was unable to electronically correctly match the Plaintiff's consumer file thus LexisNexis refused to provide either an electronic credit score or and electronic consumer report regarding the Plaintiff, resulting an adverse decision by American Express Bank.

## X. BACKGROUND RE TRANSUNION:

*Around 2009, TransUnion Severed Association Between Plaintiff's Consumer File With Bankrupts AKJ and Rosha*

126. **In 2003**, the bankrupts AKJ and Rosha filed a second bankruptcy petition.[13]

127. Debt collectors ignored the bankruptcy stay that was in place and used the platform Defendant TransUnion to pursue the Plaintiff in continued collection efforts of the bankrupts AKJ and Rosha's debt, whereas the cumulative debt of the bankrupts was well over $100,000.

128. By January 2005, on a copies of TransUnion consumer files, the Plaintiff observed that the "Dalark" address, the telephone number "2253573349," and the employer "Coca Cola" of bankrupts on "Dalark Drive" had being reported.

*129.* On or about February 28, 2005, TransUnion received letter and notary acknowledgment whereas the California notary verified Plaintiff's SSN, name, DOB and residency.

130. Whereas, by July 2005, the Plaintiff sent Defendant TransUnion  a letter and notary acknowledgement verifying Plaintiff's SSN, name and residency as prepared by his attorney. Included with the letter, the Plaintiff's attorney prepared additional documents showing the Plaintiff's identity with:

- "Equifax" dispute form listing previous addresses,
- Affidavit from attorney attesting to Plaintiff's issued SSN, name and address;
- True copy of Plaintiff's social security card,
- True copy of Plaintiff's California ID,
- Copies of Plaintiff's bank statements,
- Copies of Plaintiff's phone bills,
- Copy of letter from IRS,
- Copy of Plaintiff's apartment lease

131. **On or about June 2008**, the Plaintiff sent TransUnion a letter announcing settlement in the *King v. Equifax* lawsuit. (see **Exhibit** 129-1) Along with the letter, the Plaintiff provided TransUnion with details and evidence of the findings of the lawsuit, including findings which confirmed the Plaintiff was not associated with the bankrupts AKJ, Rosha, their offspring Shan or the affairs of "Dalark Drive."

132. **On or about November 25, 2008**, TransUnion generated a consumer report showing the

---

[13]  Case number: 03-11139, U.S. Bankruptcy Court for the Middle District of Louisiana. Debtors: Aaron King, Jr. and Rasha P. King.

employer of bankrupt AKJ "Coca Cola Bottling" as attached to the Plaintiff's TransUnion consumer file. (see **Exhibits** 130-3. Also see **Exhibit** 10-5, *Consent to Payroll Deduction* filed in U.S. Bankruptcy Court Middle District of Louisiana, case no. 97-11283)

133. The Plaintiff has <u>never</u> been employed by Coca Cola Bottling Company or its subsidiaries.

134. **On or about December 24, 2008**, the Plaintiff disputed the employer "Coca Cola Bottling" with TransUnion as incorrect and disputed other information as tainted for being reassociated with the bankrupts AKJ and Rosha.  (see **Exhibit** 132-13)

135. **On or about January 5, 2009**, TransUnion generated a consumer report showing the deletion of the employer "Coca Cola Bottling." (see **Exhibit** 134-3)


*In 2015, Plaintiff Applications for Credit Were Approved*


136. **On or about July 2015**, because of his efforts to correct his TransUnion consumer file, the Plaintiff believed his TransUnion consumer file to be in good condition since TransUnion reported no associations between the Plaintiff's consumer file and AKJ, Rosha or Shan.

137. **On or about July 16, 2015**, using his social security number, the Plaintiff applied for a short-term loan. After the lender reviewed his application, credentials and credit, the loan was approved.

138. The Plaintiff made timely payments according to the agreement. Whereas the loan and interest were paid in full.

139. **On or about September 3, 2015**, using his social security number, the Plaintiff applied for a short-term loan. After the lender reviewed his application, credentials and credit, the loan was approved.

140. The Plaintiff made timely payments according to the agreement. Whereas the loan and interest were paid in full.


*Bankrupts AKJ and Rosha Filed Their Third Bankruptcy Petition*


141. **On or about October 23, 2019**, the bankrupts AKJ and Rosha filed their <u>third</u> bankruptcy

petition.[14]

142. **On or about March 15, 2020**, the pandemic reached the Plaintiff's geographic location in California. As a result, the Plaintiff was laid-off from work, and government and civilian offices closed to visitors.

143. Because travel restrictions were in place and the closure of business and government office facilities to the public, the Plaintiff was forced to conduct business electronically online.

144. As a safety net to help navigate through the uncertainties of the pandemic, the Plaintiff sought loans and credit from American Express Bank and Synchrony Bank through their electronic application portals.

*In 2020, Following the Third Bankruptcy Filing of AKJ and Rosha, Plaintiff's Applications for Credit With American Express Bank Were Denied*

145. **On or about March 27, 2020**, the Plaintiff used his social security number and applied for credit using American Express electronic application.

146. Whereas, American Express performed a credit check using the Plaintiff's TransUnion consumer file.

147. Based in whole or in part upon the information provided by TransUnion, American Express **denied the Plaintiff's application** for credit, and directed Plaintiff to seek information from TransUnion to explain the adverse action.

148. **On or about August 14, 2020,** the Plaintiff used his social security number and applied for credit using American Express electronic application.

149. Whereas, American Express performed an electronic credit check using the Plaintiff's TransUnion consumer file. (see **Exhibit** 162-4 Inquiries section)

150. As American Express provided after attempting to get a credit score online, "We were unable to get your consumer credit score from [TransUnion]." (see **Exhibit** 40-3 ¶ 2)

151. Since **TransUnion failed to provide an electronic credit score**, American Express requested the Plaintiff's consumer report from TransUnion.

152. TransUnion did not provide an electronic credit report upon request as well, whereas

---

[14]   Case number: 19-11247, U.S. Bankruptcy Court for the Middle District of Louisiana. Debtors: Aaron King, Jr. and Rosha P. King.

American Express provided the following statement, "File not scored because subject does not have sufficient credit. (Trans Union)"   (see **Exhibit** 50-1 ¶¶ 3 & 4)

153.  Based in whole or in part upon the information (or the lack of information) provided by TransUnion, American Express denied the Plaintiff's application for credit, because TransUnion failed to provide either an electronic credit score <u>or</u> an electronic copy of the Plaintiff's consumer report. (see **Exhibit** 50-1 ¶¶ 1 - 4)

154.  American Express directed Plaintiff to seek information from TransUnion to explain the adverse action. (see **Exhibit** 40-3 ¶¶ 8 - 9)

*In 2020, Following the Third Bankruptcy Filing of AKJ and Rosha, Plaintiff's Application for Credit With Synchrony Bank Was Denied*

155.  **On or about August 14, 2020,** the Plaintiff used his social security number and applied for credit using Synchrony Bank electronic application.

156.  Whereas, Synchrony Bank performed an online credit check using the Plaintiff's TransUnion consumer file. (see **Exhibit** 162-4)

157.  Upon running a credit check electronically with TransUnion, Synchrony Bank denied Plaintiff's Application for credit.

158.  As Synchrony Bank provides in its adverse action letter, "Unfortunately, your application has been declined at this time. … In reaching this decision your application was reviewed and denied for the following reason(s): Insufficient credit history on file." (see **Exhibit** 40-1)

159.  At the bottom of the adverse action letter, Synchrony Bank provides evidence showing that TransUnion provided information regarding AKOhio to Synchrony Bank, for Synchrony Bank provides a disclaimer specifically for "Ohio residents." (see **Exhibit** 40-1)

160.  Based in whole or in part upon the information provided by TransUnion, Synchrony Bank denied the Plaintiff's application for credit, and directed Plaintiff to seek information from TransUnion to explain the adverse action.

*American Express and Synchrony Bank Provide Evidence That TransUnion Refused to Provide an Electronic Credit Score.*

161. According to the adverse action letter of American Express, "We were unable to get your consumer credit score from [TransUnion]." (see **Exhibit** 40-3 ¶ 2)

162. Since Synchrony Bank did not say the decision for the adverse action was based upon a credit score, we conclude that TransUnion failed to provide an electronic credit [score] to Synchrony Bank as well.

163. Through its negligence and confusion, TransUnion refused to provide credit scores electronically when request by lenders.

*Following the 2019 Bankruptcy, TransUnion Had Difficulty Providing Disclosure to the Plaintiff for TransUnion Was Confused About the Plaintiff Identity and Credit Activity*

164. The Plaintiff attempted to get his TransUnion consumer report through USPS around July 6, 2020, but TransUnion replied, " … we are unable to locate a credit report for you."

165. **On or about August 23, 2020**, the Plaintiff again requested a consumer report from TransUnion through USPS, and was unsuccessful.

166. **On or about September 27, 2020**, to get a copy of his TransUnion consumer report, the Plaintiff requested a TransUnion consumer report through a third-party vendor of TransUnion--Annual Credit Report--via the USPS.

167. The Plaintiff provided the same SSN and identifying information to Annual Credit Report that he provided directly to TransUnion.

168. **On or about October 2, 2020**, at the request of Annual Credit Report, TransUnion released a consumer report to the Plaintiff. Whereas, upon inspection of the consumer report, there were no signs of an association (financial or otherwise) with the bankrupts AKJ, Rosha or their offspring Shan.

*Following the 2019 Bankruptcy, Through TransUnion's Electronic Disclosure Plaintiff Discovered TransUnion Re-Associated Plaintiff's Consumer File With the Persons on Dalark Drive Resulting in Denial to Access of VA Services*

169. **On or about November 6, 2020**, the Plaintiff needed to utilize VA services. Due to the pandemic, the Plaintiff could not visit his physician or the VA offices to conduct business.

170. The Plaintiff needed to register with an Online identity verification company before he would be allowed access to the designated VA website portal.

171. On or about November 6, 2020, and at the request of the VA, the Plaintiff visited the Online identity verification  company's website and provided his SSN and other identifying information.

172. The verification company provided the following statement and the Plaintiff needed to agree to proceed: "The information I've provided is correct, and I accept the use of Fair Credit Reporting Act data to verify my identity."

173. Upon supplying his SSN and other identifying information the verification company received information to populate the challenge questions from TransUnion.[15]

174. Upon viewing the third challenge question, the Plaintiff recognised that part of the address of bankrupts AKJ and Rosha was one of the answers provided.

175. **Excerpt from November 6, 2020**, challenge question three:

"Which zip code has ever been a part of your address?

- 70208
- 70707
- 70726
- 70812
- None of the above"

176. The zip code "70812" is the zip code for the home address of bankrupts AKJ and Rosha at Dalark Dr, Baton Rouge, LA.

177. Question three shows Defendant TransUnion is once again reporting a re-association between the Plaintiff and the bankrupt AKLou.

178. Because the Plaintiff was told the question was drawn from FCRA data, the Plaintiff was led to believe the information was somewhere within the Plaintiff's TransUnion consumer file.

179. The Plaintiff answered "none of the above" thus failing the verification process.

180. As a result, the Plaintiff was denied access to VA services including scheduling appointments, communicating with physician, prescriptions and other services during the

---

[15] The Plaintiff learned that TransUnion provided the FCRA data only after receiving a copy of his consumer report.

pandemic.

*TransUnion Continues to Electronically Associate and Report Address of Bankrupts AKJ and Rosha*

181. **On or about July 28, 2021**, the Plaintiff requested a consumer report electronically pursuant CCPA,  where TransUnion required the Plaintiff to agree to the following statement,

182. "… you are providing 'written instructions' to TransUnion Interactive, Inc. to access your personal credit profile from, TransUnion. You authorize TransUnion Interactive, Inc. to access such information solely to confirm your identity and perform the action(s) you request through this site."

183. Upon agreeing to the aforementioned statement, TransUnion provided three challenge questions to further the verification process, where TransUnion contends the questions are drawn from information on the Plaintiff's TransUnion file.

184. Upon viewing the first challenge question, the Plaintiff recognised that part of the address of bankrupts AKJ and Rosha was one of the answers provided.

185. **Excerpt from July 28, 2021** challenge question:

186. "Which of these street names are you associated with?
   • Dalark Dr #6747
   • Glacier Ave
   • Juniper Blvd
   • Union Way
   • None of the Above"

187. Whereas, the address "Dalark Dr #6747" is the home address (as well as the address on record with bankruptcy court) for bankrupts AKJ and Rosha and their offspring Shan.

188. Whereas, question one shows Defendant TransUnion is confused as to the consumer file belonging to the Plaintiff.

189. **On or about December 10, 2021**, the Plaintiff ordered a consumer report through TransUnion's vendor AnnualCreditReport.com and provided his SSN and other identifying information.

190. Whereas upon supplying his SSN and other identifying information the third-party vendor received information to populate the challenge questions from the TransUnion.[16]

191. Upon viewing the first challenge question, the Plaintiff recognised that the telephone number of bankrupts AKJ and Rosha was one of the answers provided.

192. Excerpt from December 10, 2021 challenge question one:

"Which of these phone number have you ever used previously?"

- 2253573349
- 2256921854
- 2257514115
- 2259911475
- None of the Above"

193. The telephone number "2253573349" is the telephone of record of bankrupts AKJ and Rosha on "Dalark Drive.".(see **Exhibit** 10-1; Note: Baton Rouge, LA has since replaced the "504" area code with "225")

194. **On or about April 19, 2023**, TransuUnion generated a consumer report regarding the Plaintiff which shows the number "2253573349" attached to the Plaintiff's consumer file. (see **Exhibit** 299-1)

195. TransUnion continues to be confused about the identity and credit activity of the Plaintiff.

196. The Plaintiff continues to be worried, distressed and frustrated that he will be pursued and harassed by debt collectors, bounty hunters, and attorneys seeking to put him in jail for "bankruptcy fraud" just as he was pursued and harassed following the 2003 bankruptcy filing of AKJ and Rosha, which forced the *King v. Equifax et al* lawsuit.

*TransUnion Is Confused About the Plaintiff's Identity and Continues to Associate the Plaintiff With Others Using Race*

197. The Plaintiff was denied credit opportunities by American Express and Synchrony Bank

---

[16] The Plaintiff learned that TransUnion provided the FCRA data only after receiving a copy of his consumer report.

because TransUnion continues to report information which falsely shows that the Plaintiff  is associated with the bankrupts on "Dalark Drive."

198. The telephone number "2253573349" belongs [to] the family on "Dalark Drive." TransUnion is still confused as to the identity of the Plaintiff, thus readily re-associating the Plaintiff with the Black family on Dalark Drive.

199. When TransUnion was asked to provide disclosure to the Plaintiff, on April 19, 2023, TransUnion continues to show the telephone number of the bankrupts of Dalark Drive, creating a beacon associating the Plaintiff's consumer file with the bankrupts–a Black family on Dalark Drive.

200. When TransUnion was asked to provide disclosure to the Plaintiff yet again, on November 4, 2021, TransUnion sent the Plaintiff the consumer file of another Black man who resides in Ohio (AKOhio), showing another matching of files using race. (see **Exhibit** 206-3 )

201. Furthermore, around 2015, MetLife Insurance Company (hereafter "MetLife") cancelled the Plaintiff's policy and dropped the Plaintiff as a client. According to preliminary statement, the Plaintiff was dropped due to "lack of payment."

202. After an investigation by the Plaintiff and partial recanting on part of MetLife, it was determined the Plaintiff was not missing a payment. The evidence revealed the Plaintiff was one month ahead on payments. So, what happened?

203. **On June 7, 2021** (six years later) MetlLife finally provided the Plaintiff with a records disclosure showing that identifying information in the Plaintiff's insurance file was  merged with another person¹a Black man named "Aaron King" of Ohio (the same "AKOhio").

204. For six years the Plaintiff did not know why MetLife would not reinstate his original policy at the lower rate. Now he knows, but MetLife would not reveal the source of the information.

205. On or about November 4, 2021, Defendant TransUnion mailed Plaintiff a consumer report belonging to AKOhio where the only information that belonged to the Plaintiff on that report was the Plaintiff's address of "PO Box 420387, San Francisco, CA." (see **Exhibit** 206-3)

206. TransUnion confirmed that it has been harbouring a consumer file which links the Plaintiff to another Black person in Ohio. Whereas, this association confused MetLife, resulting in MetLife dropping the Plaintiff.

207. The Plaintiff disputed with TransUnion, but TransUnion did not appear willing to sever the

ties between the Plaintiff and the bankrupts on Dalark Drive, or sever the ties between the Plaintiff and AKOhio.

208. This is evident in an April 19, 2023 TransUnion consumer disclosure where the telephone number "2253573349" of the bankrupt Rosha and her offspring Shan is again attached to the Plaintiff's consumer file. (**Exhibit** 299-1)

## XI.

## BACKGROUND REGARDING EXPERIAN:

*In 2001, Experian Revealed That it Was Using the Plaintiff's Consumer File as a Dumping Ground for Incorrect Information*

209. **In 1997**, the bankrupts AKJ and Rosha filed their first bankruptcy petition.[17]

210. **On or about May 11, 2001**, the Plaintiff completed an application to rent an apartment in San Francisco, CA.

211. **On or about May 11, 2001**, the potential landlord received an electronic consumer report No, v-07/056/790103 from Experian using the Plaintiff's social security number.  (see **Exhibits** 300-1, 300-2)

212. Upon examining the May 11, 2001 Experian electronic consumer report the Plaintiff (and the landlord) observed the following information:

- the names "Lydia Benitez"[18] and her husband "Ricardo;" (see **Exhibit** 300-1)
- seven addresses of "Lydia Benitez;" (see **Exhibit** 300-1)
- the name "Aaron Keith King;" (see **Exhibit** 300-1)
- seven addresses of "Aaron Keith King" including an address on Dalark Drive; (see **Exhibits** 300-1, 300-2)
- the name "Ellen Jackson;"[19] (see **Exhibit** 300-2)
- one address of "Ellen Jackson;" (see **Exhibit** 300-2)

---

[17] Case number: 97-11283, U.S. Bankruptcy Court for the Middle District of Louisiana. Debtors: Aaron King, Jr. and Rasha P. King.
[18] After research, it was found that "Lydia Benitez" is Hispanic.
[19] The race of Ellen Jackson has not been confirmed.

213. **The May 11, 2001** Experian electronic consumer report revealed about fourteen (14) different addresses attached to Plaintiff's Experian consumer file.

214. **The May 11, 2001** Experian electronic consumer report revealed about eleven (11) different names and name variations attached to plaintiff's Experian consumer file.

215. The Plaintiff's application for the apartment was denied.

*In 2001, Plaintiff Disputed With Experian, But Experian Responded By Reporting More Information Associating the Plaintiff With Residents of the "Dalark Drive" Address*

216. The Plaintiff disputed the incorrect information in the May 11, 2001 Experian electronic consumer report, including the inclusion of the "Dalark Drive" address in his consumer file.

217. **On or about August 15, 2001**, Experian responded with a consumer report No. 2464608486 (see **Exhibits** 303-1 through 303-8) whereas

- the names and addresses associated with "Lydia Benitez" were deleted from the Plaintiff's consumer file or blocked; (see **Exhibits** 303-6 & 303-7)

- The name and addresses associated with "Ellen Jackson" were deleted from the Plaintiff's consumer file or blocked; (see **Exhibits** 303-6 & 303-7)

- Experian did not delete or block incorrect information identified and associated with the "Dalark Drive" address. (see **Exhibit** 303-7)

218. Experian attached even more information belonging to the people of "Dalark Drive" to the Plaintiff's consumer file.

219. **According to the August 15, 2001** Experian consumer report No. 2464608486, Experian reported a collection account from Southern Credit Recovery,[20] (see **Exhibit** 303-4), the "Dalark Drive" address (see **Exhibit** 303-7) and a "225 357 3349" telephone number (see **Exhibit** 303-7).

220. Whereas, upon research the Plaintiff learned that the "Dalark Drive" address and the "225

---

[20] After researching the collection account with Lane Memorial Hospital in Baton Rouge, LA, it was determined that the Southern Credit Recovery collection account belonged to bankrupts AKJ and/or Rosha.

357 3349" telephone number belonged to bankrupts AKJ and Rosha. (see **Exhibits** 10-1 & 10-2, Voluntary Petition for case No. 97-11283 filed in U.S. Bankruptcy Court for Middle District of Louisiana (1997))

221. The Plaintiff later learned after communicating with Lane Memorial Hospital the collection account being reported by Southern Credit Recovery belonged to bankrupts AKJ and Rosha as well.

222. **On or about October 2001**, the Plaintiff disputed the Southern Credit Recovery collection account, the "Dalark Drive" address, and the "225 357 3349" telephone number with Experian.

223. Experian deleted or blocked the disputed information from the Plaintiff's consumer file.

*Following 2003 Bankruptcy Filing by AKJ and Rosha, Experian Placed More Incorrect Information in Plaintiff's Consumer File Associating the Plaintiff With the People on "Dalark Drive"*

224. **In 2003**, the bankrupts AKJ and Rosha filed a second bankruptcy petition.[21]

225. **On or about January 12, 2005**, Experian received letter and notary acknowledgment whereas the California notary verified Plaintiff's SSN, name, DOB and residency.

226. **On or about March 3, 2005**, Experian sent the Plaintiff a consumer report showing that the telephone numbers "225 357 3349"[22] and a New Orleans "504" number were attached to the Plaintiff's Experian consumer file. (see **Exhibit** 327-6)

227. **On or about March 10, 2005**, the Plaintiff specifically disputed the telephone number "225 357 3349" and the "504" number in writing with Experian using FCRA dispute procedure.

228. **On or about March 19, 2005**, Experian responded to Plaintiff and sent the Plaintiff a consumer report showing the telephone numbers were deleted from the Plaintiff's consumer file or blocked. (see **Exhibits** 335-1, 335-3, 335-6)

---

[21] Case number: 03-11139, U.S. Bankruptcy Court for the Middle District of Louisiana. Debtors: Aaron King, Jr. and Rasha P. King.

[22] Whereas, upon research the Plaintiff learned that the "225 357 3349" telephone number belonged to bankrupts AKJ and Rosha. (see **Exhibits** 10-1 & 10-2, Voluntary Petition for case No. 97-11283 filed in U.S. Bankruptcy Court for Middle District of Louisiana (1997))

*In 2005, Experian Responded to March 10, 2005 Dispute by Attaching Name "Aaron J. King" to Plaintiff's File, Whereas Plaintiff Disputed the Name Using FCRA Dispute Procedure*

229. **On or about June 16, 2005**, Experian sent the Plaintiff a consumer report showing that the name "Aaron J. King" was now attached to the Plaintiff's Experian consumer file. (see **Exhibit** 349-6)

230. Upon speaking with his attorney, the Plaintiff was encouraged to quickly dispute and remove the name "Aaron J. King" from his consumer file for the name is a moniker for "Aaron King, Jr."–the bankrupt.

231. **On or about June 28, 2005**, the Plaintiff specifically disputed the name "Aaron J. King" in writing with Experian using FCRA dispute procedure. (see **Exhibits** 355-1, 355-2**,** 355-3, 355-6)

232. **On or about July 8, 2005** (some ten days later), Experian responded to Plaintiff's dispute and sent the Plaintiff a consumer report showing the name "Aaron J. King" was deleted from the Plaintiff's consumer file. (see **Exhibit** 359-8)

233. By Experian's actions, the Plaintiff was under the belief Experian deleted the name "Aaron J. King" from his consumer file.

234. Whereas, by July 2005, the Plaintiff sent Defendant Experian  a letter and notary acknowledgement verifying Plaintiff's SSN, name and residency as prepared by his attorney. Included with the letter, the Plaintiff's attorney prepared additional documents showing the Plaintiff's identity with:

- "Equifax" dispute form listing previous addresses,
- Affidavit from attorney attesting to Plaintiff's issued SSN, name and address;
- True copy of Plaintiff's social security card,
- True copy of Plaintiff's California ID,
- Copies of Plaintiff's bank statements,
- Copies of Plaintiff's phone bills,
- Copy of letter from IRS,
- Copy of Plaintiff's apartment lease

*In 2008, Experian Continued Placing Incorrect Accounts and Information in the Plaintiff's*

*Consumer File Continuing the Association With Bankrupts AKJ and Rosha*

235. **On or about November 19, 2008**, Experian sent the Plaintiff a consumer report showing three medical collection accounts were attached to the Plaintiff's Experian consumer file. (see **Exhibits** 365-1, 365-2, 365-3, 365-4)

236. Whereas upon research, it was found that the three medical collection accounts belonged to bankrupts AKJ and Rosha.

237. **On or about November 19, 2008**, Experian sent the Plaintiff a consumer report showing two telephone numbers "225 356 3687" and a Texas number were attached to the Plaintiff's Experian consumer file. (see **Exhibit** 365-5)

238. Whereas upon research, it was found the telephone number "225 356 3687" belonged to Shan汉the offspring of bankrupts AKJ and Rosha.

239. **On or about February 24, 2009**, the Plaintiff disputed the reported telephone numbers, collection accounts, and other information which would continue to link the Plaintiff's consumer file with the bankrupts AKJ and Rosha and their offspring Shan.

240. Experian deleted or blocked the disputed information from the Plaintiff's consumer file.

*In 2015, Plaintiff Applications for Credit Were Approved*

241. **On or about July 2015**, because of his efforts to correct his Experian consumer file, the Plaintiff believed his Experian consumer file to be in good condition since Experian reported no associations between the Plaintiff's consumer file and AKJ, Rosha or Shan.

242. **On or about July 16, 2015**, using his social security number, the Plaintiff applied for a short-term loan. After the lender reviewed his application, credentials and credit, the loan was approved.

243. The Plaintiff made timely payments according to the agreement. Whereas the loan and interest were paid in full.

244. **On or about September 3, 2015**, using his social security number, the Plaintiff applied for a short-term loan. After the lender reviewed his application, credentials and credit, the loan was approved.

245. The Plaintiff made timely payments according to the agreement. Whereas the loan and

1

interest were paid in full.

2

*In 2020 Following the Third Bankruptcy Filing of AKJ and Rosha, Experian Failed to Produce an*

3

*Electronic Credit Score or an Electronic Consumer Report Upon Request Contributing to*

4

*Repeated Denials of Credit*

5

6   246.  **On or about October 23, 2019**, the bankrupts AKJ and Rosha filed their third bankruptcy

7          petition.[23]

8   247.  **On or about March 15, 2020**, the pandemic reached the Plaintiff's geographic location in

9          California. As a result, the Plaintiff was laid-off from work, and government and civilian

10         offices closed to visitors.

11  248.  Because travel restrictions were in place and the closure of business and government office

          facilities to the public, the Plaintiff was forced to conduct business electronically online.

12  249.  As a safety net to help navigate through the uncertainties of the pandemic, the Plaintiff

13         sought loans and credit from lenders through their electronic application portals.

14  250.  **On or about March 27, 2020**, the Plaintiff used his social security number and applied for

15         credit using American Express electronic application.

16  251.  Whereas, American Express performed a credit check electronically of the Plaintiff's

17         Experian consumer file seeking either a credit score or a consumer report to complete the

18         Plaintiff's .credit profile. (see **Exhibit** 395-2 Inquiries section)

19  252.  According to American Express, Defendant Experian was given two opportunities to provide

20         credit profile regarding the Plaintiff, but Experian failed (refused) to deliver either an

           electronic credit score or an electronic consumer report when requested.

21  253.  Based in whole or in part upon the inability of Experian to provide a credit profile, on or

22         about March 27, 2020 American Express **denied the Plaintiff's application** for credit, and

23         directed Plaintiff to seek information from Experian to explain the adverse action.

24

25  *In 2020 Following the Third Bankruptcy Filing of AKJ and Rosha, American Express Provided*

26  *Statement Showing Experian's Unwillingness to Deliver Credit Scores or Consumer Reports*

27  ───────────────────

28  [23]  Case number: 19-11247, U.S. Bankruptcy Court for the Middle District of Louisiana. Debtors: Aaron
       King, Jr. and Rosha P. King.

───────────────────

*Electronically Upon Request Contributed to the Plaintiff's Denial of Credit*

254. **On or about August 14, 2020,** the Plaintiff used his social security number and applied for credit using American Express electronic application.

255. Whereas, American Express performed a credit check electronically of the Plaintiff's Experian consumer file seeking <u>either</u> a credit score or a consumer report to complete the Plaintiff's credit profile. (see **Exhibit** 395-2 Inquiries section)

256. According to American Express, Defendant Experian was given two options to provide credit profile regarding the Plaintiff, but Experian failed (refused) to deliver <u>either</u> an electronic credit score or an electronic consumer report when requested.

257. **Within an August 18, 2020 letter**, American Express states, "We were unable to get your consumer credit score from [Experian]" showing that **Experian refused/failed to provide an electronic credit** score. (see **Exhibit** 50-1 ¶ 2)

258. Since Experian failed to provide an electronic credit score, American Express requested the Plaintiff's consumer report from Experian, and again **Experian refused/failed to provide an electronic consumer report**. (see **Exhibit** 50-1 ¶¶ 3 & 4)

259. **On or about August 18, 2020**, based in whole or in part upon the inability of Experian to provide a credit profile American Express **denied the Plaintiff's application** for credit, and directed Plaintiff to seek information from Experian to explain the adverse action. (see **Exhibit** 50-1 ¶¶ 1, 8 and 9)

*In 2020 Following the Third Bankruptcy Filing of AKJ and Rosha, American Express Provided Statement Showing Experian Continued to Have Problems Delivering Credit Profiles Electronically Upon Request Contributing to the Plaintiff's Denial of Credit*

260. **On or about September 30, 2020,** the Plaintiff used his social security number and applied for credit using American Express electronic application.

261. Whereas, American Express performed a credit check electronically of the Plaintiff's Experian consumer file seeking <u>either</u> a credit score or a consumer report to complete the Plaintiff's credit profile. (see **Exhibit** 52-1 ¶¶ 8 - 9)

262. According to American Express, Defendant Experian was given two options to provide

credit profile regarding the Plaintiff, but Experian failed (refused) to deliver <u>either</u> an electronic credit score or an electronic consumer report when requested.

263. **Within a September 30, 2020 letter**, American Express states, "We were unable to get your consumer credit score from [Experian]" showing that **Experian refused/failed to provide an electronic credit** score. (see **Exhibit** 52-1 ¶ 2)

264. Since Experian failed to provide an electronic credit score, American Express requested the Plaintiff's consumer report from Experian, and again **Experian refused/failed to provide an electronic consumer report**. (see **Exhibit** 52-1 ¶¶ 3 & 4)

265. **On or about September 30, 2020**, based in whole or in part upon the inability of Experian to provide a credit profile American Express **denied the Plaintiff's application** for credit, and directed Plaintiff to seek information from Experian to explain the adverse action. (see **Exhibit** 52-1 ¶¶ 8 - 9)

266. **On or about November 3, 2020**, , the Plaintiff used his social security number and applied for credit using American Express electronic application.

267. Whereas, American Express performed a credit check using the Plaintiff's Experian consumer file. (see **Exhibit** 403-2 Inquiries section)

268. According to American Express, Defendant Experian was given two opportunities to provide credit profile regarding the Plaintiff, but Experian failed (refused) to deliver <u>either</u> an electronic credit score or an electronic consumer report when requested..

269. Based in whole or in part upon the inability of Experian to provide a credit profile, on or about November 3, 2020, American Express **denied the Plaintiff's application** for credit, and directed Plaintiff to seek information from Experian to explain the adverse action

*Experian Revealed That Following the Third Bankruptcy Filing of AKJ and Rosha, Experian Unblocked Previously Blocked Information on the Plaintiff's Consumer File  Such That the Plaintiffs Consumer File Has Two (2) Social Security Numbers and has Been Reassociated With Bankrupts AKJ and Rosha*

270. **On or about August 5, 2021,** the Plaintiff needed to get a broader look into his Experian consumer file. So the Plaintiff made a request for disclosure under California Consumer Privacy Act (CCPA) using the "833 210 4615" telephone number provided by Experian.

271. For reference, the Plaintiff was provided case number 24922644 by Experian.

272. **On or about August 10, 2021**, following the verification of the Plaintiff's social security number and identity, Experian sent the Plaintiff consumer report number 24922644 through USPS (not electronically) giving the Plaintiff a broader look into his Experian consumer file. (see **Exhibits** 421-2 through 421-18)

273. Whereas, the August 10, 2021 consumer report revealed Experian had undeleted or unblocked and reinserted the name "Aaron J. King" in the Plaintiff's consumer file. (see **Exhibit** 421-9 Name Variation section and Personal and Online Identifiers section)

274. Whereas, in 2005 the name "Aaron J. King" which associated the Plaintiff with bankrupts AKJ and Rosha was identified, disputed and believed to have been deleted pursuant FCRA dispute procedure.

275. The Plaintiff continues to be worried, distressed and frustrated that he will be pursued and harassed by debt collectors, bounty hunters, and attorneys seeking to put him in jail for "bankruptcy fraud"  just as he was pursued and harassed following the 2003 bankruptcy filing of AKJ and Rosha, which forced the *King v. Equifax et al* lawsuit.

276. Whereas Experian did not provide any notification to the Plaintiff that the name "Aaron J. King" would be undeleted or unblocked and reinserted into the Plaintiff's consumer file.

277. Whereas, the August 10, 2021 Experian consumer report further reveals that there are two (2) social security numbers in the Plaintiff's Experian consumer file. (see **Exhibit** 421-9, Personal and Online Identifiers section)

278. Prior to the August 10, 2021 report, Experian never indicated to the Plaintiff that a second social security number is attached to the Plaintiff's consumer file.

279. In addition, the August 10, 2021 consumer report also revealed that the following items are also unblocked and attached to the Plaintiff's Experian consumer file:

   • The existence of forty addresses; (see **Exhibits** 421-9 & 421-10,  Personal and Online Identifiers section)

   • The existence of ten telephone numbers; (see **Exhibit** 421-10,  Telephone Number section)

   • The existence of 12 name variations; (see **Exhibit** 421-9,  Name Variations section)

280. The August 10, 2021 revealed that Experian was still using the Plaintiff's consumer file as a dumping ground for incorrect information.

281. It also shows Experian is attaching information to the Plaintiff's consumer file and blocking credit related information, such as a second social security number, without giving the Plaintiff the opportunity to contest the information.

282. This is evident by the existence of the reporting of a second social security number attached to the Plaintiff's Experian consumer file.

*Following the 2019 Bankruptcy, Information Within the Plaintiff's Experian Consumer File Was Unblocked, Where the UnBlocking Even Confused Defendant Experian as to Which Information Belongs to the Plaintiff*

283. Based upon the evidence of the August 10, 2021 report, it indicates that Experian did not delete incorrect information such as the name "Aaron J. King" from the Plaintiff's consumer file even after being disputed, but blocked the information from the Plaintiff's view.

284. The August 10, 2021 report also shows that Experian continued its pattern use of the Plaintiff's consumer file as a dumping ground for incorrect information, especially information the Plaintiff specifically identified and disputed as incorrect.

285. The previously blocked social security number, the name "Aaron J. King," and the plethora of addresses and telephone numbers are once again unblocked on the Plaintiff's Experian consumer file as reported by the August 10, 2021 consumer report. (see Exhibits 421-2 through 421-18)

286. **As indicated by the August 10, 2021 consumer report**, even after positively verifying the Plaintiff's identity, Experian wilfully withheld a substantial amount of the information that is on the Plaintiff's Experian consumer file from the Plaintiff by covering the information with asterisks (*) and/or dashes. (see **Exhibits** 421-4 through 421-18)

287. As Experian stated, "Experian has collected the following specific pieces of Personal Information about you. Please note that we have masked [with *] certain sensitive information about you in this report to help protect your privacy." (see **Exhibit** 421-4 ¶ 5)

288. If Experian knew the Plaintiff to be "Aaron Keith King" and positively identified the Plaintiff using his social security number, why did Experian mask the majority of the information regarding in the Plaintiff with asterisks (*)? (see **Exhibits** 421-4 through 421-18)

289. Why?

290. Here is why. Because the information was unblocked and haphazardly strewn onto the Plaintiff's consumer file as a dumping ground, Experian was confused as to which activity or information belongs to the Plaintiff.

291. Following the 2019 bankruptcy filing, Experian (with full knowledge the Plaintiff was not the bankrupt AKJ) allowed previously blocked information to be unblocked and reinserted into the Plaintiff Experian consumer specifically the name "Aaron J. King" and the second social security number.

292. Following the 2019 bankruptcy filing, Experian allowed the unblocking (and/or reinsertion) of a second social security number, thus identifying the Plaintiff's consumer file as that of a person other than the Plaintiff.

293. The two social security numbers identifying the Plaintiff's consumer file, the name "Aaron J. King," and the plethora of incorrect addresses CONFUSED and CONFOUNDED Defendant Experian so much that Experian could not produce either an electronic credit score or an electronic consumer report for American Express (one of Experian's subscribers to its electronic reporting service) when requested electronically.

294. Defendant Experian was so confused as to which information belonged to the Plaintiff, but still hell-bent on keeping the incorrect information on the Plaintiff's consumer file, Experian tried to mask information the asterisks (*), hoping the Plaintiff would not realise Experian's inability to identify information which belongs to the Plaintiff.

295. Furthermore, Defendant Experian was so confused as to which information belongs to the Plaintiff, Experian was unwilling to generate an electronic credit score or electronic consumer report for any creditor upon request, and as directed by the consumer.

296. Because Experian was so CONFUSED and CONFOUNDED, Defendant Experian interfered with each and every credit application submitted by the Plaintiff, including the multiple American Express applications, by underlined refusing to provide any information to the potential creditors of the Plaintiff when requested.

*The Plaintiff Also Experienced Difficulty Obtaining Electronic Disclosure/Reports from Experian and Notified Experian of His Difficulties in a Dispute Obtaining Disclosure*

297. **On or about July 15, 2021**, the Plaintiff used the electronic portal of Experian and attempted to obtain a consumer report electronically using his social security number and other identifiers.

298. The Plaintiff was unsuccessful in obtaining an electronic consumer report and received the following message from Experian, "We were unable to authenticate your identity." (see **Exhibit** 409-3)

299. **On or about August 4, 2021**, the Plaintiff used the electronic portal of Experian and attempted to obtain a consumer report electronically using his social security number and other identifiers.

300. The Plaintiff was unsuccessful in obtaining an electronic consumer report and received the following message from Experian, "We were unable to authenticate your identity." (see **Exhibit** 415-15)

301. The Plaintiff was having such a difficult time obtaining electronic disclosure from Experian, the Plaintiff notified Experian of his difficulties in a dispute. (see **Exhibit** 431-2, page 4, 14th Dispute, also **Exhibit** 431-3, USPS certified return receipt)

302. **On or about November 12, 2021**, Plaintiff even sought to obtain an electronic Experian consumer report via web site of Experian's  third-party vendor AnnualCreditReport.com, and was unsuccessful again. Experian provided, "Sorry, we were unable to verify your identity" (see **Exhibit** 443)

303. Upon multiple attempts, the Plaintiff and lender American Express were unable to obtain electronic consumer reports through Experian or through Experian's third-party vendor AnnualCreditReport.com upon request.

*The Re-association With Bankrupt AKJ and the Existence of Two Social Security Numbers Are Plausible Reasons That Would Explain Why Lender American Express and Plaintiff Were Unable to Obtain Online Consumer Reports When Requested*

304. Following the 2019 bankruptcy filing by AKJ and Rosha, Experian allowed the name "Aaron J. King" within the Plaintiff's consumer file to become unblocked thus compromising and re-associating the Plaintiff's consumer file with the bankrupts AKJ and Rosha.

305. Following the 2019 bankruptcy filing by AKJ and Rosha, Experian allowed a second social security number within the Plaintiff's consumer file to become unblocked thus confusing the ownership of the consumer file.

306. The reassociation is evidenced by the unblocking and reinsertion of the name "Aaron J. King" into Plaintiff's Experian consumer file. (see **Exhibit** 421-9 Name Variation section and Personal and Online Identifiers section)

307. According to Social Security Administration (SSA), outside of unusual circumstances, a person is issued one social security number for his/her lifetime.

308. The Plaintiff has been issued <u>only</u> one social security number by the SSA and uses that one and only social security number.

309. Having two social security numbers attached to the Plaintiff's Experian consumer file further adds confusion in identifying the Plaintiff's Experian consumer file.

*Plaintiff Disputed Contents of the Plaintiff's Consumer File Alerting Experian to the Problems, But Experian Failed to Provide More Information, Provide Clarity or Address the Issues*

310. On or about October 22, 2021, the Plaintiff disputed the contents of his consumer file as reported by Experian. (see **Exhibits** 431-2, 431-3)

311. On or about October 22, 2021, the Plaintiff disputed the August 10, 2021 consumer report with Experian for the Plaintiff was unable to interpret the  pattern of asterisks (*) and/or blanks covering relevant information. (see **Exhibit** 431-2, 6th Dispute & **Exhibit** 431-3)

312. On or about October 22, 2021, the Plaintiff disputed the August 10, 2021 consumer report with Experian for Experian refused to disclose all of the information  in the Plaintiff's consumer file at the time of request. (see **Exhibit** 431-2, 1st Dispute, 2nd Dispute  & **Exhibit** 431-3)

313. Within the October 22, 2021 dispute, the Plaintiff challenged the two (2) social security numbers, fifteen (15) name variations, forty (40) addresses, six (6) date of birth variations, and ten (10) telephone number attached to his consumer file.  (see **Exhibit** 431-2, 7th Dispute, 8th Dispute,  9th Dispute & **Exhibit** 431-3)

314. Within the October 22, 2021 dispute, the Plaintiff contended that the August 10, 2021 consumer report is subject to the Fair Credit Reporting Act for it provides credit related

information which is on the Plaintiff's Experian consumer file. (see *Pl. Points & Authorities Showing the August 10, 2021 Consumer Report is Subject to Provisions of FCRA*)

315. Within the October 22, 2021 dispute, the Plaintiff also contended the name "Aaron J. King" was incorrect, disputed and deleted from Plaintiff's consumer file under FCRA procedure in the year 2005, thus the name "Aaron J. King" cannot be reinstated in Plaintiff's file using a new state law such as the California Consumer Privacy Act (CCPA), whereas the CCPA became effective in 2020. (see **Exhibits** 431-2 & 431-3)

316. Experian did not provide responses to the concerns raised in the Plaintiff's October 22, 2021 dispute.

## XII. BACKGROUND REGARDING EQUIFAX:

*Following Bankruptcy Filing of AKJ and Rosha, Equifax Began Confusing Plaintiff's Creditors*

317. **In 1997**, the bankrupts AKJ and Rosha filed their first bankruptcy petition.[24]

318. Following the bankruptcy filing, Equifax believed Plaintiff to be bankrupt AKJ and began placing information and debt of AKJ, Rosha and their offspring Shan on the Plaintiff's Equifax consumer file.

319. **In 2003**, the bankrupts AKJ and Rosha filed a second bankruptcy petition.[25]

320. **On or about April 4, 2005**, Equifax received letter and notary acknowledgment whereas the California notary verified Plaintiff's SSN, name, DOB and residency.

321. **Around April 2005**, the Plaintiff's attorney sent Defendant Equifax a letter and notary acknowledgement verifying Plaintiff's SSN, name and residency as prepared by his attorney. Included with the letter, the Plaintiff's attorney prepared additional documents showing the Plaintiff's identity with:

- "Equifax" dispute form listing previous addresses,
- Affidavit from attorney attesting to Plaintiff's issued SSN, name and address;

---

[24] Case number: 97-11283, U.S. Bankruptcy Court for the Middle District of Louisiana. Debtors: Aaron King, Jr. and Rasha P. King.
[25] Case number: 03-11139, U.S. Bankruptcy Court for the Middle District of Louisiana. Debtors: Aaron King, Jr. and Rasha P. King.

- True copy of Plaintiff's social security card,
- True copy of Plaintiff's California ID,
- Copies of Plaintiff's bank statements,
- Copies of Plaintiff's phone bills,
- Copy of letter from IRS,
- Copy of Plaintiff's apartment lease

*Regarding Defendant Equifax, This is a Breach of Contract Matter First!*

322. **In 2006**, because Defendant Equifax and associated debt collectors would not relent their position and continued to pursue the Plaintiff for collection of debt of bankrupts AKJ, Rosha and their offspring Shan, the Plaintiff (*in Pro Se*) sued Equifax in U.S. District Court[26] and obtained relief.

323. **In 2008**, to set aside the FCRA claims and end the lawsuit, the Plaintiff and Defendant Equifax entered into a *Settlement Agreement*. As conditions of the *Settlement Agreement*, Equifax agreed to purge the Plaintiff's file, separate the bankrupt AKJ and Rosha's information (and information of the Dalark household) from the Plaintiff, and protect the Plaintiff's file from being re-associated.

324. Equifax also agreed within the *Settlement Agreement* to maintain the address "PO Box 420387, San Francisco, CA" as the sole address on the Plaintiff's Equifax consumer file.[27]

*In 2015, Plaintiff Applications for Credit Were Approved*

325. **On or about July 2015**, because of his efforts to correct his Equifax consumer file, the Plaintiff believed his Equifax consumer file to be in good condition since Equifax reported no associations between the Plaintiff's consumer file and bankrupts AKJ, Rosha, their offspring Shan or derogatory information.

326. **On or about July 16, 2015**, using his social security number, the Plaintiff applied for a

---

[26] *King v. Equifax, et al.* (2006), cv-06-00275 MJJ, U.S. District Court, Northern District of California, San Francisco Division.
[27] Plaintiff would like to file a copy of the *Settlement Agreement* under seal.

short-term loan. After the lender reviewed his application, credentials and credit, the loan was approved.

327. The Plaintiff made timely payments according to the agreement. Whereas the loan and interest were paid in full.

328. **On or about September 3, 2015,** using his social security number, the Plaintiff applied for a short-term loan. After the lender reviewed his application, credentials and credit, the loan was approved.

329. The Plaintiff made timely payments according to the agreement. Whereas the loan and interest were paid in full.

*Bankrupts AKJ and Rosha Filed Their Third Bankruptcy Petition*

330. **On or about October 23, 2019**, the bankrupts AKJ and Rosha filed their <u>third</u> bankruptcy petition.[28]

331. **On or about March 15, 2020**, the pandemic reached the Plaintiff's geographic location in California. As a result, the Plaintiff was laid-off from work, and government and civilian offices closed to visitors.

332. Because travel restrictions were in place and the closure of business and government office facilities to the public, the Plaintiff was forced to conduct business electronically online.

333. As a safety net to help navigate through the <u>uncertainties</u> of the pandemic, the Plaintiff sought loans and credit from Discover Bank through its electronic application portal. (see **Exhibit** 58-2)

*In 2020 Following the Third Bankruptcy Filing of AKJ and Rosha, Discover Bank Denied Plaintiff's Application for Credit Based Upon Information Provided by Equifax*

334. **On or about March 27, 2020,** the Plaintiff used his social security number and applied for credit using Discover Bank electronic application.

---

[28]   Case number: 19-11247, U.S. Bankruptcy Court for the Middle District of Louisiana. Debtors: Aaron King, Jr. and Rosha P. King.

335. Whereas, Discover Bank performed a credit check electronically of the Plaintiff's Equifax consumer file seeking either a credit score or a consumer report to complete the Plaintiff's credit profile.[29] (see **Exhibits** 58-2 & 58-3)

336. Equifax provided a credit score and key factors affecting the credit score.[30] (see **Exhibit** 58-3)

337. As for the credit score, on March 27, 2020 Equifax delivered the following credit score electronically to Discover Bank刘FICO score "622." [31] (see **Exhibit** 58-3)

338. According to FICO, a score of 622 places the Plaintiff in the 18th percentile. This means 82 percent of FICO scores issued in the U.S. are better than the Plaintiff's score.

339. As explained to the Plaintiff by Discover Bank, a 622 credit score is reflective of someone whom recently declared bankruptcy and has probably obtained new credit.

340. **On or about March 27, 2020**, Discover Bank did not approve the Plaintiff's application for credit. As Discover Bank stated in its adverse action letter, "When we reviewed your application for Discover It® card we unfortunately could not approve your request due to the following: Insufficient credit history" (see Exhibit 58-2 ¶ 1)

341. This conclusion was based upon an extremely low credit score and the associated key factors affecting the low credit score.[32]

342. In the adverse action letter, Discover Bank reiterated that Equifax provided the credit score and the "key factors that affected your credit score were as follows:[33]

   • Insufficient identity verification;

---

[29] Although the Plaintiff actively sought this information from 2020 through 2022 from Discover Bank and Equifax, the lender Discover Bank (the principal of Equifax) did not release this information to the Plaintiff until May 9, 2023 reinvestigation.

[30] Although the Plaintiff actively sought this information from 2020 through 2022 from Discover Bank and Equifax, the lender Discover Bank (the principal of Equifax) did not release this information to the Plaintiff until May 9, 2023 reinvestigation.

[31] Although the Plaintiff actively sought this information from 2020 through 2022 from Discover Bank and Equifax, the lender Discover Bank (the principal of Equifax) did not release this information to the Plaintiff until May 9, 2023 reinvestigation.

[32] Although the Plaintiff actively sought this information from 2020 through 2022 from Discover Bank and Equifax, the lender Discover Bank (the principal of Equifax) did not release this information to the Plaintiff until May 9, 2023 reinvestigation.

[33] Although the Plaintiff actively sought this information from 2020 through 2022 from Discover Bank and Equifax, the lender Discover Bank (the principal of Equifax) did not release this information to the Plaintiff until May 9, 2023 reinvestigation.

---

- Number of address changes on file;
- Number of inquiries on credit bureau;
- Too few accounts with recent payment information;
- Lack of evidence of property ownership"[34] (see **Exhibit** 58-3)

343. Curious and upset, the Plaintiff sought disclosure of consumer report from Equifax to compare with the information in the Discover Bank March 27, 2020 adverse action letter.

*In 2020 Following the Third Bankruptcy Filing of AKJ and Rosha, The Plaintiff Sought Disclosure of Credit Report From Defendant Equifax.*

344. On or about August 24, 2020, the Plaintiff attempted to get copies of his Equifax consumer report directly from Equifax as he had done in the past through USPS. The Plaintiff was unsuccessful.

345. On or about September 27, 2020, the Plaintiff attempted to get copies of his Equifax consumer report directly from Equifax as he had done in the past through USPS. The Plaintiff was unsuccessful.

346. On or about September 27, 2020, since the Plaintiff was having difficulty getting an Equifax consumer report upon direct request to Equifax, the Plaintiff requested a copy through Equifax's vendor Annual Credit Report via USPS.

347. On or about October 2, 2020, upon making the request through Annual Credit Report, Defendant Equifax released a copy of the Plaintiff's Equifax consumer report to the Plaintiff. (see **Exhibit** 754-6)

*The Plaintiff Compared the October 2, 2020 Equifax Consumer Disclosure to the Adverse Action Letter and Found Equifax, Confused About the Plaintiff's Identity, Reported Information Based Upon Another's Credit Profile to Discover Bank Causing an Adverse Action*

348. Upon inspecting the October 2, 2020 Equifax disclosure that was requested via USPS, the

---

[34] Although the Plaintiff actively sought this information from 2020 through 2022 from Discover Bank and Equifax, the lender Discover Bank (the principal of Equifax) did not release this information to the Plaintiff until May 9, 2023 reinvestigation.

disclosure shows the Plaintiff 's correct name, correct date of birth, correct address, and correct last four digits of his SSN. (see **Exhibit** 754-6, single page)

349. According to the March 27, 2020 adverse action letter, Equifax could not verify the Plaintiff's identity when the request for credit score was made electronically by Discover Bank.[35]

350. Defendant Equifax states, "Insufficient identity verification."[36](see Exhibit 58-3 ¶ 5)

351. As Discover Bank explained to the Plaintiff in a telephone conversation, "insufficient identity verification" means the consumer file contains identifying information (such as SSN or date of birth) that conflicts with the identifying information provided.

352. And according to Discover Bank in the same telephone conversation, this discrepancy alone is enough to deny an application for credit.

353. When the Plaintiff inspected the October 2, 2020 Equifax disclosure requested through USPS, the Plaintiff's identifiers of name, date of birth, social security number, and address (as they were provided to Discover Bank) are the only identifiers present, and THEY ARE ALL CORRECT!

354. According to the October 2, 2020 disclosure, the Plaintiff's consumer file is sufficiently identified by the provided name, SSN, date of birth, and address. (see **Exhibit** 754-6)

355. Defendant Equifax misrepresented the correctness and uniqueness of the Plaintiff's identifying information giving Discover Bank reason to question Plaintiff's identity by providing the statement "Insufficient identity verification."[37]

356. Furthermore, Equifax alerted Discover Bank to numerous address changes on the Plaintiff's consumer file with the statement, "Number of address changes on file."[38] (see **Exhibit** 58-3 ¶

---

[35] Although the Plaintiff actively sought this information from 2020 through 2022 from Discover Bank and Equifax, the lender Discover Bank (the principal of Equifax) did not release this information to the Plaintiff until May 9, 2023 reinvestigation.

[36] Although the Plaintiff actively sought this information from 2020 through 2022 from Discover Bank and Equifax, the lender Discover Bank (the principal of Equifax) did not release this information to the Plaintiff until May 9, 2023 reinvestigation.

[37] Although the Plaintiff actively sought this information from 2020 through 2022 from Discover Bank and Equifax, the lender Discover Bank (the principal of Equifax) did not release this information to the Plaintiff until May 9, 2023 reinvestigation.

[38] Although the Plaintiff actively sought this information from 2020 through 2022 from Discover Bank and Equifax, the lender Discover Bank (the principal of Equifax) did not release this information to the Plaintiff until May 9, 2023 reinvestigation.

5)

357. But when the Plaintiff inspected the October 2, 2020 Equifax disclosure, there is only one (1) address on the Plaintiff's consumer file. (see **Exhibit** 754-6)

358. Equifax, once again, gave Discover Bank incorrect information about the Plaintiff's credit character by implying the Plaintiff has numerous addresses on his Equifax consumer file.

359. Equifax continues defaming the Plaintiff by alerting Discover Bank to an excessive number of inquiries on the Plaintiff's consumer file with the statement, "Number of inquiries on credit bureau."[39] (see **Exhibit** 58-3)

360. But when the Plaintiff inspects the October 2, 2020 Equifax disclosure, on the date Discover Bank "pulled" the Plaintiff's consumer report on March 27, 2020, there was only one (1) inquiry from "CHASE CARD" dated March 24, 2020 on the Plaintiff's Equifax consumer file.

361. Equifax, yet again, gave Discover Bank incorrect information about the Plaintiff's credit character.

*Defendant Equifax Generated a Credit Score With Credit Characteristics of Another Consumer and Delivered It to Discover Bank & Possibly Other Businesses*

362. Defendant Equifax has defamed the Plaintiff by giving incorrect assessment ("key factors") and credit score based upon the incorrect assessment of the Plaintiff's credit character to Discover Bank.

363. As a result, Discover Bank denied the Plaintiff's application and now has negative credit information on file regarding the Plaintiff's credit character.

364. The credit character provided by Defendant Equifax is that of another consumer.

365. But whom?

366. In order to expedite the process of obtaining consumer files, the Plaintiff began requesting disclosure electronically through Equifax's electronic application portals.

---

[39] Although the Plaintiff actively sought this information from 2020 through 2022 from Discover Bank and Equifax, the lender Discover Bank (the principal of Equifax) did not release this information to the Plaintiff until May 9, 2023 reinvestigation.

*Equifax Electronic Application Portal Provided Evidence That Equifax is Using Credit Activities*
*of Someone Else to Determine Plaintiff's Credit Worthiness*

367. On or about July 15, 2021, the Plaintiff requested disclosure through Equifax's website.

368. Whereas, upon providing his identifying information to, Equifax transmitted four verification challenge questions to the Plaintiff.

369. Within each question, Equifax contends that the challenge question information reported is drawn from the Plaintiff's "credit file."

370. In the form of challenge questions, the following is the credit activity of the Plaintiff as reported by Equifax's website:

*** BEGIN CHALLENGE QUESTIONS ***

1. Your credit file indicates you may have a retail card, Who is the credit provider for this account?

- BlueStem Brands, Inc
- Macy's Inc
- Nordstrom Inc
- Sears Holdings Corporation
- None of the above

2. Your credit file indicates you may have a bank card, opened in or around May 2017. Who is the credit provider for this account?

- Bank of America
- BB&T Corporation
- Credit One Bank
- State Farm
- None of the above

3. Your credit file indicates you may have an auto loan/lease, opened in or around April 2020. Who is the credit provider for this account?

- Old National
- Regions Financial
- United Service Company or America
- Xerox CU

- None of the above

4. What is the total monthly payment for the above-referenced account?

- $400 - $449

- $450 - $499

- $500 - $549

- $550 - $599

- None of the above

*** END CHALLENGE QUESTIONS ***

371. Not one of the questions relate to a credit transaction involving the Plaintiff. NOT A SINGLE QUESTION!

372. The Plaintiff selected "None of the above" for all four answers. Needless to say, the Plaintiff failed the verification and did not get an electronic Equifax disclosure.

373. Each question pertains to someone other than the Plaintiff, but whom.

374. After research, the Plaintiff learned that questions 2, 3 & 4 correspond to credit activity of bankrupts on "Dalark Drive"–AKJ and/or Rosha.[40]

375. Defendant Equifax admitted in open court and in filed documents that the credit information in Question 2 pertains to bankrupt Rosha with the following statement, "A potential match comes in paragraphs 177 and 181 of FAC, where Plaintiff claims that challenge question about a bank card from either  Bank of America, BB&T, Credit One Bank, State Farm, or 'None of the above,' related to the other consumer he identified. But this claim, too, wilts upon inspection. For while  bankruptcy schedules Plaintiff invokes do show two Credit One Bank accounts were included in the bankruptcy, they also show that these accounts belonged to 'Debtor 2 only,' who the bankruptcy petition identified as a woman with the first name 'Rosha' …" (see Docket 35, *Def. Equifax … Brief in Reply to Pl. First Am. Compl*., page 7, ¶ 5)

376. The Plaintiff is not, and was not, a customer of Credit One Bank.

377. Also, if we take a closer look at Question 3, we see that Regions Financial is part of the banking portfolio of bankrupts AKJ and Rosha at time of filing in 2019 and at the close of

---

[40] See U.S. Bankruptcy Court Middle District of Louisiana, Case # 19-11247, Form 106G, Schedule G: Executory Contracts and Unexpired Leases, Section 2.1; See also Form 106E/F, Schedule E/F: Creditors Who Have Unsecured Claims, Part 2; See also Form 106A/B, Schedule A/B: Property, Part 4.

the bankruptcy in 2020. (see **Exhibit** 10-7, case 19:11247 U.S. Bankruptcy Court for Middle District of Louisiana, Schedule A/B Property, page 5)

378.  The Plaintiff is not, and was not, a customer of Regions Financial.

379.  The Plaintiff has contended, and continues to contend that he is being re-associated, especially electronically, with the people at the "Dalark Drive." address–bankrupt AKJ, Rosha and/or their offspring Shan.

380.  The Plaintiff is now worried, distressed and frustrated that he will be pursued and harassed by debt collectors, bounty hunters, and attorneys seeking to put him in jail for "bankruptcy fraud"  just as he was pursued and harassed following the 2003 bankruptcy filing of AKJ and Rosha, which forced the *King v. Equifax et al* lawsuit.

*Evidence Shows That Equifax Is Electronically Confusing the Plaintiff's Credit Affairs With the Affairs of other People–especially the People on "Dalark Drive."*

381.  Equifax has electronically submitted incorrect credit information to Discover Bank resulting in an adverse action.

382.  Through electronic medium, when provided the social security number and other identifiers of the Plaintiff, Equifax provides credit information not related to the Plaintiff, but information consistent with credit activities of the people on "Dalark Drive"--AKJ, Rosha, and/or their offspring Shan.

383.  Thus, following the 2019 bankruptcy, Equifax has re-established a link between the Plaintiff and the people on 'Dalark Drive," creating the false belief that the Plaintiff is associated with the people on "Dalark Drive."

*Plaintiff Sent Defendant Equifax a FCRA Dispute Alerting Equifax to the Discrepancies in Reporting and Concerns About Receiving Information Electronically That Does Not Pertain to the Plaintiff*

384.  **On or about October 22, 2021**, the Plaintiff sent Equifax a FCRA notifying --

385.  Equifax of breach of contract by continuing to report information of people on "Dalark Drive" as part of the Plaintiff's consumer file;

386. Equifax allowed credit related information of the bankrupts to resurface as associated with the Plaintiff's Equifax consumer file, in breach of settlement agreement;

387. Equifax's refusal to report information in Plaintiff's file when requested (electronically);

388. Equifax continues to promote credit related  activity of the bankrupts (and/or possibly other consumers) as credit related activity belonging of the Plaintiff, also in breach of settlement agreement;

389. When credit related information of the Plaintiff is requested by someone other than the Plaintiff, Equifax reports the credit related information of the bankrupts on "Dalark Drive" (and/or possibly other consumers);

390. Equifax is not reporting an accurate picture of the Plaintiff's credit related activity;

391. As a conclusion, since Equifax continues to associate the Plaintiff with the bankrupts on "Dalark Drive," Equifax is using the information of the bankrupts   (and/or possibly other consumers) in computing lower credit score for the Plaintiff.

392. On or about October 29, 2021, Equifax responded to the dispute, but did nothing to change the practice of reporting credit related information of the bankrupts AKJ or Rosha (and/or possibly other consumers) as if the credit related information belongs to the Plaintiff.

393. In sort, following the 2019 bankruptcy filing by AKJ and Rosha, Defendant Equifax was confused about the Plaintiff's identity & credit affairs.

394. Because Equifax was confused, Equifax reported to Discover Bank a low credit score and information based upon financial activity of other persons–the bankrupts

395. The resulting low credit score and other negative information of another consumer reported by Equifax resulted in a denial of credit.

## XIII.
## CLAIMS FOR RELIEF AGAINST
## DEFENDANT LEXISNEXIS

396. Violation of 15 U.S.C. § 1681e:  By failing to assure maximum possible accuracy of the information concerning the individual about whom the report relates when preparing a report for American Express and other lenders, LexisNexis has wilfully and/or negligently violated protections of 15 U.S.C. § 1681e(b).

397. By refusing to provide the Plaintiff or creditors with consumer report when requested, LexisNexis is wilfully and/or negligently violating 15 U.S.C. § 1681g.

398. Violation of 15 U.S.C. § 1681h: By refusing to disclose <u>any</u>  information when requested electronically, LexisNexis has wilfully and/or negligently violated 15 U.S.C. § 1681h(b).

399. Violation of 15 U.S.C. § 1681i: Defendant LexisNexis failed to maintain reasonable procedure pursuant 15 U.S.C. § 1681i (a)(5)(C) to prevent the reappearance of the address "Dalark Drive" by allowing the address (and/or other information) to reappear in the Plaintiff's <u>consumer file</u> or on <u>consumer reports</u> regarding the Plaintiff. LexisNexis has wilfully and/or negligently violated 15 U.S.C. § 1681i.

400. Violation of 15 U.S.C. § 1681i: Defendant LexisNexis failed to reasonably reinvestigate information disputed by the Plaintiff pursuant 15 U.S.C. § 1681i (a)(1)(A). LexisNexis has wilfully and/or negligently violated 15 U.S.C. § 1681i.

401. Fraud 1: Following the 2019 bankruptcy filing by AKJ and Rosha, (1) LexisNexis associated the Plaintiff's consumer file with the "Dalark Drive" address of the bankrupts AKJ and Rosha; (2) Previously, LexisNexis had received proof from the Plaintiff and the Alameda County District Attorney showing the Plaintiff was not associated with the address or the people at the "Dalark Drive" address; (3) Even with knowledge the Plaintiff was not associated with the "Dalark Drive" address or the bankrupts AKJ, Rosha or their offspring Shan, LexisNexis maintained the association with "Dalark Drive" to prevent the Plaintiff from exercising his credit; (4) Plaintiff applied for credit with American Express believing all was well with his consumer files; (5) Because LexisNexis had re-associated the Plaintiff's consumer file with identifying information of the bankrupts AKJ and Rosha, this created confusion as to which identifying information belonged to the Plaintiff. Because of the confusion, LexisNexis refused to provide a credit profile (consumer file or credit score) resulting in denial of credit (adverse action) with American Express.

402. Fraud 2: Following the 2019 bankruptcy filing of AKJ and Rosha, (1) the Plaintiff, using his social security number, applied for credit with lender American Express Bank. The lender contacted LexisNexis for a credit profile (credit score and/or consumer report) regarding the Plaintiff, but LexisNexis refused to deliver a credit profile representing that the Plaintiff lacked a consumer file; (2) LexisNexis knew representation was false for the Plaintiff did have LexisNexis consumer file; (3) LexisNexis induced reliance by continuing to refuse to

release a credit score or consumer report when one or the other could have been delivered; (4) American Express relied on the representation that the Plaintiff did not have a LexisNexis consumer file; (5) Because LexisNexis refused to provide any information for a credit profile, American Express denied the Plaintiff's credit application and recorded an adverse action against the Plaintiff.

403. Fraud 3: Following the 2019 bankruptcy filing of AKJ and Rosha, (1) the Plaintiff, using his social security number, applied for credit with lender American Express Bank;  The lender contacted LexisNexis for a credit profile (credit score and/or consumer report) of the Plaintiff, but LexisNexis failed to deliver a credit profile representing that the Plaintiff lacked a consumer file; (2) LexisNexis' representation was false; (3) LexisNexis knew representation was false for the Plaintiff did have LexisNexis consumer file; (4) LexisNexis intended the lender to rely on the representation; (5) The lender reasonably relied on LexisNexis representation; (6) As a result, the lender denied the Plaintiff's application creating an adverse action; (7) The lender's reliance on LexisNexis' representation was a substantial  factor in the adverse action.

404. Violation of 42 U.S. Code § 1981: LexisNexis, with actual knowledge there is no association or contract linking the Plaintiff (a Black man) with the affairs of a Black family on "Dalark Drive" who filed for bankruptcy, with actual knowledge the Plaintiff has never filed for bankruptcy, and with actual knowledge the consumers in question have different social security numbers, LexisNexis continues to deliberately link the Plaintiff's consumer file and credit character to the members of this Black family on "Dalark Drive" resulting in confusion and denial of credit. Thus, **but for racial animus, the link between the Plaintiff and the other persons (AKJ, Rosha, Shan) would not have occurred and Plaintiff would have had a fair opportunity of being approved for credit.** LexisNexis is in violation of 42 U.S. Code § 1981.

405. Violation of 42 USC § 2000d: Defendant LexisNexis as a recipient of federal funding, is engaged in the practice of matching consumer files by race. For example, even with actual knowledge there is no association or contract linking the Plaintiff (a Black man) with the affairs of a Black family on Dalark Drive, even with actual knowledge the consumers have different social security numbers, because so many subscribers of LexisNexis services are allowed to post consumer information without first verifying and checking the manner the

information was obtained, LexisNexis allows the posting of consumer information obtained simply because there is a racial association. As a result, the consumer files of the Plaintiff and other consumers become the "dumping ground" for incorrect information such as telephone numbers, addresses, or employers associating them with other unsuspecting consumers simply because they are of the same race. These same telephone numbers, addresses, and employers are tags ("breadcrumbs" as the Plaintiff described previously) which are used with LexisNexis reverse search software to erroneously match consumer files. This continues to happen to the Plaintiff where race is the guide wire connecting the Plaintiff's consumer file to bankrupts, and LexisNexis continues to profit from subscriptions to its reverse search software. Thus, LexisNexis is violating the Plaintiff's and other consumers' rights pursuant 42 USC § 2000d by continuing to link the approval of applications for consumer credit, employment, insurance, and/or government services to race.

406. Lack of safeguards: Using the Plaintiff's LexisNexis consumer file as an example, Defendant LexisNexis is engaged in a skip tracing practice which deliberately links persons by race and places incorrect information such as addresses or telephone numbers or employers or even social security numbers (hidden or blocked) within the files of unsuspecting consumers to create false associations. This is done so that so that LexisNexis may benefit in subscriptions and promotion of its reverse search software. This practice of deliberately placing and allowing incorrect information in the files of racially targeted consumers in and of itself violates 15 U.S.C. § 1681e(b), 42 USC § 2000d and 42 U.S. Code § 1981. The Plaintiff seeks an Order to curb this practice.

## XIV.
## CLAIMS FOR RELIEF AGAINST
## DEFENDANT TRANSUNION

407. Violation of 15 U.S.C. § 1681e:  By failing to assure maximum possible accuracy of the information concerning the individual about whom the report relates (the Plaintiff) when preparing reports, TransUnion has wilfully and/or negligently violated protections of 15 U.S.C. § 1681e(b).

408. By refusing to provide the Plaintiff or creditors with consumer report when requested, TransUnion is wilfully and/or negligently violating 15 U.S.C. § 1681g.

409. Violation of 15 U.S.C. § 1681h: By refusing to disclose any information when requested electronically, TransUnion has wilfully and/or negligently violated 15 U.S.C. § 1681h(b).

410. Violation of 15 U.S.C. § 1681i: Defendant TransUnion failed to maintain reasonable procedure pursuant 15 U.S.C. § 1681i (a)(5)(C) to prevent the reappearance of the address "Dalark Drive" and/or telephone number "2253573349" belonging to the bankrupts AKJ, Rosha and their offspring Shan (and/or other information) to reappear in the Plaintiff's consumer file or on consumer reports regarding the Plaintiff. TransUnion has wilfully and/or negligently violated 15 U.S.C. § 1681i.

411. Fraud 1: Following the 2019 bankruptcy filing of AKJ and Rosha, (1) the Plaintiff, using his social security number, applied for credit with lender American Express Bank. The lender contacted TransUnion for a credit profile (credit score and/or consumer report) regarding the Plaintiff, but TransUnion refused to deliver a credit profile representing that the Plaintiff lacked a consumer file; (2) TransUnion knew representation was false for the Plaintiff did have TransUnion consumer file; (3) TransUnion induced reliance by continuing to refuse to release a credit score or consumer report when one or the other could have been delivered; (4) American Express relied on the representation that the Plaintiff did not have a TransUnion consumer file; (5) Because TransUnion refused to provide any information for a credit profile, American Express denied the Plaintiff's credit application and recorded an adverse action against the Plaintiff.

412. Fraud 2: By continuing to link the Plaintiff's consumer file with the "Dalark Drive" address and/or the telephone number of the bankrupts AKJ, Rosha, or their offspring Shan, even after receiving notification from the Plaintiff (in 2005), Equifax's attorneys (in 2008), the Plaintiff (in 2021 and 2022) that the Plaintiff has no association with the people on Dalark Drive, TransUnion continues to post information belonging to the bankrupts AKJ. Rosha and/or their offspring Shan. TransUnion is committing fraud against the Plaintiff.

413. Fraud 3: (1) the Plaintiff, using his social security number, applied for credit with lender Synchrony Bank. The lender contacted TransUnion for a credit profile (credit score and/or consumer report) regarding the Plaintiff, but TransUnion delivered to the lender information regarding a person in Ohio (AKOhio); (2) TransUnion knew the person in Ohio had a

different SSN than the Plaintiff, and was not the Plaintiff; (3) TransUnion induced reliance by upon providing information of the Ohio person to the lender; (4) Synchrony Bank relied on the representation that the information belonged to the Plaintiff; (5) Because of the information provided, Synchrony Bank denied Plaintiff's application for credit and recorded an adverse action against the Plaintiff.

414. Violation of 42 U.S. Code § 1981: TransUnion, with actual knowledge the Plaintiff has no association with a Black family on Dalark Drive (bankrupts) continues to link the Plaintiff consumer file and credit character to this Black family resulting in denial of credit. Thus, **but for racial animus, the link between the Plaintiff and the other persons (AKJ, Rosha, Shan) would not have occurred and Plaintiff would have had a fair opportunity of being approved for credit.** TransUnion is in violation of 42 U.S. Code § 1981.

415. Violation of 42 U.S. Code § 1981: TransUnion, with actual knowledge the Plaintiff is not the Black man AKOhio continues to link the Plaintiff consumer file and credit character to AKOhio resulting in denial of credit. Thus, **but for racial animus, the link between the Plaintiff and the other person (AKOhio) would not have occurred and Plaintiff would have had a fair opportunity of being approved for credit.** TransUnion is in violation of 42 U.S. Code § 1981.

416. Violation of 42 USC § 2000d: Defendant TransUnion as a recipient of federal funding, is engaged in the practice of matching consumer files by race. For example, even with actual knowledge there is no association or contract linking the Plaintiff (a Black man) with the affairs of a Black family on Dalark Drive and a Black man in Ohio, even with actual knowledge the consumers have different social security numbers, because so many subscribers of TransUnion services are  allowed to post consumer information without first verifying and checking the manner the information was obtained, TransUnion  allows the posting of consumer information obtained simply because there is a racial association. As a result, the consumer files of the Plaintiff and other consumers become the "dumping ground" for incorrect information such as telephone numbers, addresses, or employers associating them with other unsuspecting consumers simply because they are of the same race. These same telephone numbers, addresses, and employers are tags ("breadcrumbs" as the Plaintiff described previously) which are used with TransUnion reverse search software to erroneously match consumer files. This continues to happen to the Plaintiff where race is the

guide wire connecting the Plaintiff's consumer file to bankrupts and a person in Ohio, and TransUnion continues to profit from subscriptions to its reverse search software. Thus, TransUnion is violating the Plaintiff's and other consumers' rights pursuant 42 USC § 2000d by continuing to link the approval of applications for consumer credit, employment, insurance, and/or government services to race.

417. Lack of safeguards: Using the Plaintiff's TransUnion consumer file as an example, Defendant TransUnion is engaged in a skip tracing practice which deliberately links persons by race and places incorrect information such as addresses or telephone numbers or employers or even social security numbers (hidden or blocked) within the files of unsuspecting consumers to create false associations. This is done so that so that TransUnion may benefit in subscriptions and promotion of its reverse search software. This practice of deliberately placing and allowing incorrect information in the files of racially targeted consumers in and of itself violates 15 U.S.C. § 1681e(b), 42 USC § 2000d and 42 U.S. Code § 1981. The Plaintiff seeks an Order to curb this practice.

## XV.
## CLAIMS FOR RELIEF AGAINST
## DEFENDANT EXPERIAN

418. Violation of 15 U.S.C. § 1681c-2:  If information is blocked pursuant FCRA, 15 U.S.C. § 1681c-2 allows a block to be rescinded only under three reasons. By rescinding a block under reason not listed in 15 U.S.C. § 1681c-2(c), especially the rescinding of blocked information "Aaron J. King," Experian has wilfully and/or negligently violated the protections of 15 U.S.C. § 1681c-2.

419. Violation of 15 U.S.C. § 1681c-2:  By failing to provide notification pursuant 15 U.S.C. § 1681c-2(c)(2) to Plaintiff of unblocking (or reinsertion) of information in a file which was blocked or deleted pursuant FCRA, especially the name "Aaron J. King," Experian has wilfully and/or negligently violated the protections of  15 U.S.C. § 1681c-2.

420. Violation of 15 U.S.C. § 1681e:  By failing to assure maximum possible accuracy of the information concerning the individual about whom the report relates when preparing a report for American Express and other lenders, Experian has wilfully and/or negligently violated

protections of 15 U.S.C. § 1681e(b).

421. Violation of 15 U.S.C. § 1681g: By disclosing a limited amount of information contained in the Plaintiff's file when requested through FCRA, and disclosing the existence of even more credit-related information when a request is made under state law, Experian has wilfully and/or negligently violated the protections of  15 U.S.C. § 1681g(a).

422. Violation of 15 U.S.C. § 1681h: By refusing to disclose any  information when requested electronically, Experian has wilfully and/or negligently violated 15 U.S.C. § 1681h(b).

423. Violation of 15 U.S.C. § 1681i: Upon unblocking or reinsertion of the name "Aaron J. King" (and/or other information) into Plaintiff's file, Experian did not provide notification or warn Plaintiff of its reinsertion as required pursuant 15 U.S.C. § 1681i (a)(5)(B)(ii). Experian has wilfully and/or negligently violated 15 U.S.C. § 1681i.

424. Violation of 15 U.S.C. § 1681i: By refusing to alert the Plaintiff to the unblocking or reinsertion of the name "Aaron J. King"(and/or other information) into the Plaintiff file, Experian did not provide notice and information pursuant 15 U.S.C. § 1681i (a)(5)(B)(iii) so that he may challenge the unblocked or reinserted information, thus Experian has wilfully and/or negligently violated 15 U.S.C. § 1681i

425. Violation of 15 U.S.C. § 1681i: Defendant Experian failed to maintain reasonable procedure pursuant 15 U.S.C. § 1681i (a)(5)(C) to prevent the reappearance of the name "Aaron J. King" by allowing the name "Aaron J. King" (and/or other information) to reappear in the Plaintiff's consumer file or on consumer reports regarding the Plaintiff. Experian has wilfully and/or negligently violated 15 U.S.C. § 1681i

426. Violations of 15 U.S.C. §§ 1681c-2 and 1681i: Defendant Experian placed incorrect information such as a second social security number  in the Plaintiff's consumer file and blocked the existence of the second social security number from the Plaintiff's disclosures. As a result, the Plaintiff was never given the opportunity to dispute the existence of the second social security number. By doing this, Experian wilfully denied the Plaintiff the right to challenge the incorrect information, thus Experian wilfully violated the Plaintiff's right to dispute under 15 U.S.C. §§ 1681c-2, 1681g and 1681i.

427. Violations of 15 U.S.C. §§ 1681c-2 and 1681i: Defendant Experian is in the practice of placing incorrect information on consumer files (such as a second social security number) and blocking the information from the consumer. As a result, the consumer does not know

the incorrect information is attached to his consumer file. By this practice, Experian is wilfully denying the consumer the right to challenge the incorrect information, thus violating the consumer's right to dispute under 15 U.S.C. §§ 1681c-2, 1681g and 1681i. The Plaintiff seeks Order to stop this practice.

428. Violation of 15 U.S.C. § 1681t: As a practice, Experian is violating 15 U.S.C. § 1681t by engaging in a practice of pre-empting FCRA by reporting all credit related information under state law CCPA and refusing to report all credit related information under federal FCRA.

429. Violation of 15 U.S.C. § 1681b: As a practice, Experian is using CCPA to pre-empt FCRA permissible purpose requirements, thus Experian has created an avenue to release credit related information and circumvent the permissible purpose requirements in furnishing consumer reports in violation of 15 U.S.C. § 1681b. The Plaintiff seeks an Order to stop this practice.

430. Fraud 1: Following the 2019 bankruptcy filing of AKJ and Rosha, (1) the Plaintiff, using his social security number, applied for credit with lender American Express Bank;  The lender contacted Experian for a credit profile (credit score and/or consumer report) of the Plaintiff, but Experian failed to deliver a credit profile representing that the Plaintiff  lacked a consumer file; (2) Experian's representation was false; (3) Experian knew representation was false for the Plaintiff did have Experian consumer file; (4) Experian intended the lender to rely on the representation; (5) The lender reasonably relied on Experian's representation; (6) As a result, the lender denied the Plaintiff's application creating an adverse action; (7) The lender's reliance on Experian's representation was a substantial  factor in the adverse action.

431. Fraud 2: (1) In 2021 the Plaintiff learned that Experian had been maintaining a second social security number in the Plaintiff's file, but blocked it from view of the Plaintiff. In addition the Plaintiff discovered that Experian did not delete the name "Aaron J. King," but also blocked the name from the Plaintiff just as it blocked the existence of the second social security number. (concealment/misrepresentation) (2) Experian had actual knowledge the name "Aaron J. King" and the second social security number did not belong to the Plaintiff, for Experian received affidavit, notary acknowledgement and dispute, but Experian did not delete the name and cleverly kept and the second social security number blocked. (knowledge of falsity) (3) From 2006 through 2021, with the issuance of each consumer report to the Plaintiff, Experian never informed the Plaintiff of the existence of a second

social security number, and that the number and the name "Aaron J. King" were being blocked from the Plaintiff's inspection. Furthermore, to maintain the deception, Experian refused to provide FCRA required notification announcing the unblocking or reinsertion of information within the Plaintiff's consumer file. (intent to defraud) (4)When the Plaintiff applied for credit in 2020, he was under the belief that there were no "anomalies" within his credit file--especially the existence of a second social security number or the name "Aaron J. King." (justifiable reliance) (5) Because Experian confused and confounded itself and creditors with the unblocking of the name "Aaron J. King" and the unblocking of the second social security number (and other information) following the 2019  bankruptcy filing, Experian was unable to discern which information belonged to the Plaintiff, thus was unable (and/or unwilling) to release an electronic credit score <u>or</u> electronic consumer report to creditors (or to the Plaintiff or to third-party vendor AnnualCreditReport.com) when requested, resulting in denial of credit. (resulting damage)

432. Violation of 42 U.S. Code § 1981: In 2001, Experian placed incorrect information on the Plaintiff's consumer file linking the Plaintiff's consumer file with Hispanic persons (Lydia Benitez), Black persons (on Dalark Drive), and a person presumed White (Ellen Jackson). The Plaintiff disputed the incorrect information pertaining to Lydia Benitez, the Dalark Drive persons and Ellen Jackson, but Experian only deleted or blocked information associated with Lydia Benitez and Ellen Jackson. Following this, Experian dumped more information and debt of the Black persons on Dalark Drive into the Plaintiff's Experian consumer file. The name "Aaron J. King" is a moniker of the bankrupt "Aaron King, Jr.," whereas the name "Aaron J. King" was attached to the Plaintiff's consumer file in conjunction with debt and telephone number of bankrupts Aaron King, Jr., Rosha and their offspring Shan. In 2020, with actual knowledge the Plaintiff has no association with a Black family on Dalark Drive (bankrupts), [Experian] continues to link the Plaintiff consumer file and credit character to this Black family resulting in denial of credit. Thus, **but for racial animus, the link between the Plaintiff and the other persons (AKJ, Rosha, Shan) would not have occurred and Plaintiff would have had a fair opportunity of being approved for credit.** Thus, Experian continues to violate Plaintiff's rights pursuant 42 U.S. Code § 1981.

433. Violation of 42 USC § 2000d: Defendant Experian as a recipient of federal funding, is

engaged in the practice of matching consumer files by race. For example, even with actual knowledge there is no association or contract linking the Plaintiff (a Black man) with the affairs of a Black family on Dalark Drive, even with actual knowledge the consumers have different social security numbers, because so many subscribers of Experian services are allowed to post consumer information without first verifying and checking the manner the information was obtained, Experian allows the posting of consumer information obtained simply because there is a racial association. As a result, the consumer files of the Plaintiff and other consumers become the "dumping ground" for incorrect information such as telephone numbers, addresses, or employers associating them with other unsuspecting consumers simply because they are of the same race. These same telephone numbers, addresses, and employers are tags ("breadcrumbs" as the Plaintiff described previously) which are used with Experian reverse search software to erroneously match consumer files. This continues to happen to the Plaintiff where race is the guide wire connecting the Plaintiff's consumer file to bankrupts, and Experian continues to profit from subscriptions to its reverse search software. Thus, Experian is violating the Plaintiff's and other consumers' rights pursuant 42 USC § 2000d by continuing to link the approval of applications for consumer credit, employment, insurance, and/or government services to race.

434. Lack of safeguards: Using the Plaintiff's Experian consumer file as an example, Defendant Experian is engaged in a skip tracing practice which deliberately links persons by race and places incorrect information such as addresses or telephone numbers or employers or even social security numbers (hidden or blocked) within the files of unsuspecting consumers to create false associations. This is done so that so that Experian may benefit in subscriptions and promotion of its reverse search software. This practice of deliberately placing and allowing incorrect information in the files of racially targeted consumers in and of itself violates 15 U.S.C. § 1681e(b), 42 USC § 2000d and 42 U.S. Code § 1981. The Plaintiff seeks an Order to curb this practice.

## XVI.
## CLAIMS FOR RELIEF AGAINST
## DEFENDANT EQUIFAX

435.  Breach of Contract: In the 2008 Settlement Agreement between the Plaintiff and Equifax, Defendant Equifax agreed to maintain the address "PO Box 420387, San Francisco, CA" as the sole address on the plaintiff's consumer file. When Equifax provided credit score to Discover Bank, Equifax conveyed to Discover Bank that the Plaintiff had multiple addresses on his Equifax consumer file. Thus, Equifax breached the terms of the agreement.[41]

436.  Breach of Contract: In 2008, to set aside the FCRA claims and end the lawsuit, the Plaintiff and Defendant Equifax entered into a *Settlement Agreement*. As conditions of the *Settlement Agreement*, Equifax agreed to purge the Plaintiff's file, separate the bankrupt AKJ and Rosha's  information (and information of the Dalark household) from the Plaintiff, and protect the Plaintiff's file from being re-associated. Equifax has reintroduced information of the bankrupts into the credit profile of the Plaintiff. Thus, Equifax is conveying to the Plaintiff's creditors credit scores and other information that are drawn upon the credit profile of the bankrupts and others.  Because of the Plaintiff's credit character has been re-associated with the bankrupts AKJ and Rosha and credit worthiness damaged by denials of credit, Equifax has breached the terms of the agreement.

437.  Violation of 15 U.S.C. § 1681e:  By failing to assure maximum possible accuracy of the information concerning the individual about whom the report relates (the Plaintiff) when preparing a report for Discover Bank and other lenders, Equifax has wilfully and/or negligently violated protections of 15 U.S.C. § 1681e(b).

438.  Fraud: Following the 2019 bankruptcy, by giving lenders such as Discover Bank incorrect information regarding the Plaintiff's credit worthiness and character, where Equifax knows the information is false, where this information is not part of the Plaintiff consumer file, but convinces creditors that it is part of the Plaintiff's credit file, thus resulting in denial of credit, Equifax committed fraud against the Plaintiff.

439.  Defamation: Following the 2019 bankruptcy, by giving lenders such as Discover Bank incorrect information regarding the Plaintiff's credit worthiness and character, where this information false and is not part of the Plaintiff consumer file resulting in denial of credit, Equifax wilfully defamed the Plaintiff's character.

440.  Violation of 42 U.S. Code § 1981: Following the 2019 bankruptcy filing, just as in 2003,

---

[41] Plaintiff would like to file the 2008 Settlement Agreement under seal.

Equifax ignored differences in names, SSN's, dates of birth, employment, spouses, residences and re-associated the Plaintiff with bankrupts AKJ, Rosha and their offspring Shan, whereas the Plaintiff and bankrupts AKJ, Rosha and their offspring Shan are of the same race. This [re-association] resulted in an adverse action against the Plaintiff's credit and character. Following the 2019 bankruptcy filing, **but for racial animus, the link between the Plaintiff and the other persons (AKJ, Rosha, Shan) would not have occurred and Plaintiff would have had a fair opportunity of being approved for credit.** Equifax is in violation of 42 U.S § 1981.

441.   Violation of 42 USC § 2000d: Defendant Equifax as a recipient of federal funding, is engaged in the practice of matching consumer files by race. For example, even with actual knowledge there is no association or contract linking the Plaintiff (a Black man) with the affairs of a Black family on Dalark Drive, even with actual knowledge the consumers have different social security numbers, because so many subscribers of Equifax services are allowed to post consumer information without first verifying and checking the manner the information was obtained, Equifax  allows the posting of consumer information obtained simply because there is a racial association. As a result, the consumer files of the Plaintiff and other consumers become the "dumping ground" for incorrect information such as telephone numbers, addresses, or employers associating them with other unsuspecting consumers simply because they are of the same race. These same telephone numbers, addresses, and employers are tags ("breadcrumbs" as the Plaintiff described previously) which are used with Equifax reverse search software to erroneously match consumer files. This continues to happen to the Plaintiff where race is the guide wire connecting the Plaintiff's consumer file to bankrupts, and Equifax continues to profit from subscriptions to its reverse search software. Thus, Equifax is violating the Plaintiff's and other consumers' rights pursuant 42 USC § 2000d by continuing to link the approval of applications for consumer credit, employment, insurance, and/or government services to race.

442.   Lack of safeguards: Using the Plaintiff's Equifax consumer file as an example, Defendant Equifax is engaged in a skip tracing practice which deliberately links persons by race and places incorrect information such as addresses or telephone numbers or employers or even social security numbers (hidden or blocked) within the files of unsuspecting consumers to create false associations. This is done so that so that [Equifax] may benefit in subscriptions

and promotion of its reverse search software. This practice of deliberately placing and allowing incorrect information in the files of racially targeted consumers in and of itself violates 15 U.S.C. § 1681e(b), 42 USC § 2000d and 42 U.S. Code § 1981. The Plaintiff seeks an Order to curb this practice.

## XVII. JURY TRIAL DEMANDED

Plaintiff demands trial by jury.

## XVIII.
## PRAYER FOR RELIEF

443. An Order Directing All Defendants to Purge information in all files regarding the Plaintiff;

444. An Order Directing All Defendants to purge and close all accounts they have regarding the Plaintiff;

445. An Order Directing All Defendants to remove key identifiers of the Plaintiff from all other consumer files and sever the links and associations which have been created with other consumer files;

446. An Order Directing All Defendants to Cease carrying any consumer information on the Plaintiff's file and disallow anyone from posting information to the Plaintiff's file. The Plaintiff's file is now and forever a "read only" file whereas if anyone or any entity should inquire about the Plaintiff for any reason, the Defendants are Directed to provide the following statement prominently displayed: "By Law We Are Not Allowed to Provide Any Information on This Person." No other information is to be given.

447. An Order Directing All Defendants to use social security numbers to match Consumer files, especially the Plaintiff's;

448. An Order Directing All Defendants to stop their present skip tracing practice which deliberately places incorrect information on Consumers' files in order to increase revenue from their reverse search products;

449. An Order Directing All Defendants to stop the practice of using this reverse search practice that willfully associates Consumers by race;

450. An Order against Equifax for Breach of Settlement Agreement and associated damages and relief for this failure of duty under contract;

451. An Order against Equifax for Defamation and associated damages for failure of duty.

452. Against all Defendants, Court Costs, Expenses, compensatory damages, statutory damages, and punitive damages for willful (and negligent) acts in violating FCRA, committing Fraud, Defamation, and operating a race-based system of matching which interferes with granting of credit, government [services] and/or insurance;

453. An Order directing the U.S. Attorney General and/or Federal Trade Commission to investigate all Defendants involved in episodes of using race to match consumer files during the credit approval process;

454. An Order directing the U.S. Attorney General and/or Federal Trade Commission to investigate all Defendants involved in practice of using illegal skip tracing practices to sell or promote their reverse search products;

455. Any additional relief the Court finds necessary and appropriate.


Submitted June 20, 2023                    /S/   Aaron King                    .

                                           Aaron King, Plaintiff in Pro Se