UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AARON KING,

        Plaintiff,

  v.

EQUIFAX INFORMATION SERVICES, LLC, LEXISNEXIS RISK SOLUTIONS, INC., TRANS UNION, LLC, and EXPERIAN INFORMATION SOLUTIONS, INC.,

        Defendants.

No. C 22-07484 WHA

**ORDER RE PLAINTIFF'S MOTION FOR LEAVE TO AMEND**

## INTRODUCTION

Plaintiff, proceeding *pro se*, brought this action alleging that he was subject to inaccurate credit reporting. A prior order granted the motions to dismiss all claims against three of our four defendants (defendant Trans Union did not move to dismiss), but allowed plaintiff to seek leave to amend his complaint. Plaintiff now moves to do so. For the reasons below stated, plaintiff's motion is **GRANTED IN PART AND DENIED IN PART**.

## STATEMENT

Defendants are four consumer reporting agencies ("CRAs"): Equifax Information Services, LexisNexis Risk Solutions, Trans Union, and Experian Information Solutions. The specific facts plaintiff Aaron King alleges as to each defendant are described in our previous order. *King v. Equifax Info. Servs., LLC*, No. C 22-07484 WHA, 2023 WL 3006552 (N.D.

1  Cal. Apr. 18, 2023). In sum, plaintiff alleges that defendants included information of a
2  different Aaron King ("Louisiana Aaron") as part of plaintiff's consumer files maintained by
3  each defendant. He attributes difficulties in applying for various government benefits, loans,
4  and insurance to these inaccuracies.

5  The now 70-page Second Amended Complaint for which leave is sought adds detail to
6  the previously alleged facts, as follows: The additions explain that plaintiff submitted
7  applications for credit via American Express, Synchrony Bank, and Discover Bank in 2020, all
8  of which were denied (Second Amd. Compl. ¶¶ 80–83, 144–63, 197, 250–69, 333–43, Dkt.
9  No. 59-1). The Second Amended Complaint also explains that plaintiff applied for and
10 obtained a "short-term loan" in 2015 with no problems, which has been fully paid (Second
11 Amd. Compl. ¶¶ 62–66, 136–40, 242–45, 325–29). Separately, the proposed complaint
12 describes how MetLife Insurance Company, out of the blue, cancelled plaintiff's policy in
13 2015 for lack of payment. It alleges that in June 2021, MetLife finally disclosed to plaintiff
14 records showing that his file was merged with that of yet another Aaron King, this time of
15 Ohio ("Ohio Aaron"), and that this confusion was due to inaccurate information provided by
16 defendant Trans Union (Second Amd. Compl. ¶¶ 201–208).

17 The Second Amended Complaint also continues to detail various alleged inaccuracies
18 with disclosures plaintiff received from defendants, as well as his troubles passing challenge
19 questions when attempting online identity verification, described more fully in our prior orders
20 (Dkt. Nos. 45, 46).

21 Our prior order dismissed all claims as to defendants Equifax, LexisNexis, and Experian.
22 *See King*, 2023 WL 3006552, at *1. The Second Amended Complaint reasserts the following
23 dismissed claims against defendants LexisNexis and Experian: violations of Sections 1681e,
24 1681g, and 1681i of the Fair Credit Reporting Act ("FCRA"), 42 U.S.C. Section 1981, 42
25 U.S.C. Section 2000d, and common law fraud. As to defendant Equifax, plaintiff reasserts
26 claims for violations of FCRA Section 1681e only, 42 U.S.C. Section 1981, 42 U.S.C. Section
27 2000d, common law fraud, and that Equifax is liable in contract for breaching its settlement
28 agreement with plaintiff. Plaintiff also reasserts his claims that Experian violated FCRA

Sections 1681b and 1681t by using the California Consumer Privacy Act of 2018 ("CCPA") to circumvent the FCRA.

The proposed amended complaint also adds new claims: violation of FCRA Section 1681h as to LexisNexis; violation of FCRA Sections 1681c-2 and 1681h as to Experian; defamation as to Equifax; and violation of FCRA Section 1681h as to Trans Union.

All four defendants oppose amendment. Plaintiff attached a revised version of his proposed amended complaint as part of his reply briefing, which an order allowed to function as the operative version of the amended pleading he seeks to file (hereinafter, "Second Amended Complaint"), and which the foregoing references (Dkt. No. 62). Only LexisNexis filed a sur-reply in response to that development. This order follows full briefing and finds the motion suitable for disposition on the papers under Civil Local Rule 7-1(b).

**ANALYSIS**

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend shall be freely given when justice so requires. Nevertheless, leave is not granted automatically: "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 815 (9th Cir. 2020) (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)). Amendment is futile "[i]f no amendment would allow the complaint to withstand dismissal as a matter of law." *Ibid.* (citing *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989)). *Pro se* papers are read liberally. *See Christensen v. Comm'r*, 786 F.2d 1382, 1384 (9th Cir. 1986) (citation omitted).

Our prior order granted dismissal because "at core, [plaintiff's] claims require further inferential steps, which are that the errant information was disseminated somehow, for some reason, to third parties, which then in turn somehow adversely impacted plaintiff." *King*, 2023 WL 3006552, at *2. To that end, plaintiff's Second Amended Complaint now provides three particular transactions to which the claims may be tethered: "Plaintiff sought loans and credit from American Express Bank and Synchrony Bank through their electronic application portals," as well as that from Discover Bank (Second Amd. Compl. ¶¶ 144, 333).

1        Plaintiff applied for credit via American Express at least four times, on March 27, August
2    14, September 30, and November 3 of 2020 (Second Amd. Compl. ¶¶ 145–54, 260–69).
3    American Express provided two virtually identical responses regarding the denials, one dated
4    August 18, 2020, and the other dated September 30, 2020 (Second Amd. Compl. ¶¶ 153, 263;
5    Exh. 50-1, Dkt. No. 55-4; Exh. 52-1, Dkt. No. 54-9). Those responses explained that
6    American Express was "unable to get your consumer credit score from the agency(ies) listed at
7    the end of this letter" (Exh. 50-1; Exh. 52-1). Those responses further stated that "[t]he
8    consumer credit reporting agency provided the following information regarding your credit
9    file: File not scored because subject does not have sufficient credit. (Trans Union)" (*ibid.*).

10       As for Synchrony Bank, plaintiff applied for credit on August 14, 2020. He received a
11   letter explaining that his "application was reviewed and denied for the following reason(s):
12   Insufficient credit history on file" (Second Amd. Compl. ¶¶ 155–60). Plaintiff also alleges that
13   a disclaimer at the bottom of the denial letter for Ohio residents indicates that Synchrony Bank
14   believed plaintiff was Ohio Aaron.

15       Also in March 2020, plaintiff submitted an electronic application for credit with Discover
16   Bank. He received a denial letter which explained that Discover Bank "could not approve your
17   request due to the following: INSUFFICIENT CREDIT HISTORY" (Second Amd. Compl. ¶¶
18   334–343; Exh. 58-2, Dkt. No. 55-10; Exh. 58-3, Dkt. No. 54-11). The letter further explained
19   that Equifax provided a FICO XD credit score of 622 as well as a list of "key factors that
20   affected your credit score," which included: insufficient identity verification; number of
21   address changes on file; number of inquiries on credit bureau; too few accounts with recent
22   payment information; and lack of evidence of property ownership (*ibid.*).

23       **1.   REASSERTED PRIOR-DISMISSED FCRA CLAIMS.**
24       While the foregoing facts now ground plaintiff's grievances in particular transactions,
25   they are not enough to bridge the chasm of inference that remains. In sum, plaintiff's denied
26   credit applications here do not sufficiently support claims for violations of federal credit
27   reporting statutes. As explained in our prior order, "to sustain either a § 1681e or a § 1681i
28   claim, a consumer must first 'make a "prima facie showing of inaccurate reporting"' by the

4

CRA." *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018) (quoting *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010)). Likewise, "[t]o bring a § 1681e claim, the 'consumer must present evidence tending to show that a [CRA] prepared a report containing inaccurate information.'" *Id.* at 755 (quoting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)).

The problem here is that plaintiff has not plausibly pled inaccurate reporting by a CRA, and without that "prima facie showing," plaintiff's FCRA claims fail. CRAs are required by law to provide access to credit reporting information upon an individual's inquiry, a mechanism that plaintiff is familiar with and has used many times to receive such disclosures, as detailed in his pleadings. Plaintiff is thus in a position to point to specific data about him that is wrong and could have been inaccurately reported by a CRA in a credit report. Nevertheless, our Second Amended Complaint asserts that "[w]hen the Plaintiff inspected the October 2, 2020 Equifax disclosure requested through USPS, the Plaintiff's identifiers of name, date of birth, social security number, and address (as they were provided to Discover Bank) are the only identifiers present, and THEY ARE ALL CORRECT!" (Second Amd. Compl. ¶¶ 334–361).

Instead, plaintiff's argument is that his credit application denials necessarily give rise to the inference that CRAs reported inaccurate information. For example, Discover Bank explained his denial was in part due to "insufficient identity verification" which "means the consumer file contains identifying information (such as SSN or date of birth) that conflicts with the identifying information provided." Leaving aside the various other reasons listed in that denial letter, as described above the Second Amended Complaint then goes on to assert that his Equifax data as provided to Discovery Bank contained no inaccuracies. Plaintiff argues that because the information on the disclosure he received is accurate, but his denial letter nevertheless includes "insufficient identity verification" as a reason, it must mean that Equifax disclosed inaccurate information to Discover Bank (Second Amd. Compl. ¶¶ 334–361; Exh. 58-2; Exh. 58-3).

1    Equifax points out that our complaint's averment that the identifying information
2    provided to Discover Bank matched what was on the Equifax disclosure is impossible, because
3    "the disclosure contained a Post Office Box, but federal regulation requires that financial
4    institutions obtain a street address before opening an account" (Equifax Opp. 4 (citing 31
5    C.F.R. 103.121(b)(2)(i))). More importantly however, insufficient identity verification was
6    only one of many reasons listed by Discover Bank in its denial. Plaintiff isolates one element
7    of a denial letter for the inference that an inaccurate disclosure was made by Equifax when the
8    disclosure he received himself from Equifax contained no inaccuracies. That alone does not
9    plausibly establish inaccurate reporting here.

10    The Discover Bank application and its reliance on Equifax is the closest the Second
11    Amended Complaint comes to tying specific information to one of the three denied
12    applications. As to Experian, plaintiff cites a CCPA report that disclosed various data entries
13    potentially associated with plaintiff's personal information, such as variations on plaintiff's
14    name and different addresses. From this, plaintiff draws the conclusion that "the plethora of
15    incorrect addresses CONFUSED and CONFOUNDED Defendant Experian so much that
16    Experian could not produce either an electronic credit score or an electronic consumer report
17    for American Express (one of Experian's subscribers to its electronic reporting service) when
18    requested electronically" (Second Amd. Compl. ¶ 293). As our prior order explained, plaintiff
19    "makes no showing as to why 'the information . . . Experian failed to disclose is of the type
20    that has been included in a *consumer report* in the past or is planned to be included in such a
21    report in the future,' which is necessary to sustain a Section 1681g violation." *King*, 2023 WL
22    3006552, at *4 (citation omitted). Indeed, plaintiff's newly-attached exhibit of this report itself
23    states: "This information does not appear in, relate to, and is not used in Experian's consumer
24    credit file," while then providing instructions for how to obtain a credit report (Exh. 421-9).
25    Ultimately, plaintiff's own allegation dooms his claim: instead of alleging an inaccurate credit
26    report, the Second Amended Complaint now alleges that a credit report was *not* provided at all,
27    which falls short of the requisite "prima facie showing of inaccurate reporting" to sustain
28    FCRA claims. *Shaw*, 891 F.3d at 756 (citation omitted).

The updated allegations as to LexisNexis fare no better. Similarly, the LexisNexis report plaintiff takes issue with is a consumer file disclosure (part of which is a CCPA report), and our prior order laid out the crucial distinction — for purposes of the FCRA — between consumer file disclosures and a consumer report. *See King*, 2023 WL 3006552, at *3. And again, the allegation at core is that: "According to American Express, Defendant LexisNexis was given two opportunities to provide credit profile [sic] regarding the Plaintiff, but LexisNexis failed (refused) to deliver either an electronic credit score or an electronic consumer report when requested" (Second Amd. Compl. ¶ 82).

In essence, instead of making a prima facie showing that there was an inaccurate CRA report (the complaint now alleges that CRAs are *not* providing credit reports), plaintiff works backwards from his credit denials to arrive at that inference. That is insufficient to sustain his FCRA claims. All three denial letters list insufficient credit history as a reason (among others), which does not automatically suggest that CRAs inaccurately reported plaintiff's credit history, let alone that he has bad credit. Moreover, our complaint is devoid of facts establishing specific pieces of information that could have been inaccurately reported. Instead, to find that plaintiff has plausibly pled his FCRA claims here is to conclude that plaintiff likely would have been entitled to those credit applications given the information in his files at CRAs, and this order declines to make such a determination. Everyday citizens with accurate credit files can still have their credit applications denied. The Second Amended Complaint fails to fill the remaining gaps that were the basis for earlier dismissal. Amendment of all reasserted FCRA claims against Experian, Equifax, and LexisNexis would be futile, and is thus **DENIED**.

### 2. NEW FCRA CLAIMS.

Plaintiff's proposed amendment also adds new FCRA claims. The Second Amended Complaint now adds a FCRA Section 1681c-2 claim in the prayer for relief as to Experian. Section 1681c-2 states that "a consumer reporting agency shall block the reporting of any information in the file of a consumer that the consumer identifies as information that resulted from an alleged identity theft." Plaintiff makes no allegations of identity theft, nor does he attribute any of the information he disputes to identity theft. There is no reference to identity

theft at all in the Second Amended Complaint, so this provision of the FCRA is entirely inapplicable here.

Meanwhile, Section 1681h of the FCRA "governs the '[c]onditions and form of disclosure to consumers,' disclosures that CRAs are required or permitted to make under" the FCRA. *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1165 (9th Cir. 2009). Plaintiff's new allegations regarding this section are identical as to defendants LexisNexis, Experian, and Trans Union: "By refusing to disclose any information when requested electronically, [defendant] has wilfully and/or negligently violated 15 U.S.C. § 1681h(b)" (Second Amd. Compl. ¶¶ 398, 409, 422). As stated in Section 1681h itself, it is Section 1681g that requires disclosures, while Section 1681h governs the form of those required disclosures. Plaintiff's Section 1681h claims are redundant at best, as the Second Amended Complaint continues to make previously dismissed Section 1681g claims identical to those under Section 1681h: "By refusing to provide the Plaintiff or creditors with consumer report when requested, [defendant] is wilfully and/or negligently violating 15 U.S.C. § 1681g" (Second Amd. Compl. ¶¶ 397, 408, 421). Plaintiff has not sufficiently alleged claims under Section 1681h, so amendment to allow the addition of those claims would be futile. Plaintiff's proposed amendment of new FCRA claims against Experian, Equifax, and LexisNexis is **DENIED**.

3. **REASSERTED NON-FCRA PRIOR-DISMISSED CLAIMS.**

Plaintiff also reasserts his racial discrimination and fraud claims, which our prior order granting dismissal found predicated on the FCRA claims. Leaving aside that the FCRA claims remain insufficiently pled, the proposed Second Amended Complaint merely repleads the claims, offering no basis to plausibly sustain plaintiff's theory that "but for racial animus, the link between the Plaintiff and the other persons (AKJ, Rosha, Shan or AKOhio) would not have occurred and Plaintiff would have had a fair opportunity of being approved for credit" (Second Amd. Compl. ¶¶ 40, 404, 414, 415, 440). Again, this order "will not indulge in plaintiff's unpled theories for how the alleged information may have arrived in his consumer file due to discriminatory associations by race, especially when the complaint explains that potentially commingled parties all have the same names." *King*, 2023 WL 3006552, at *5.

1  Also, plaintiff reasserts his breach of contract claim against Equifax based on online identity
2  verification challenge questions. For the same reasons as before, this claim likewise fails.
3  *Ibid.* Amendment to reassert claims under 42 U.S.C. Section 1981, 42 U.S.C. Section 2000d,
4  common law fraud, and breach of contract as to defendants LexisNexis, Experian, and Equifax
5  is **DENIED**.

### 4.  NEW NON-FCRA CLAIM.

Outside of the FCRA and prior-asserted non-FCRA claims, plaintiff also seeks to add a defamation claim against Equifax. The basis for this claim appears in one sentence: "by giving lenders such as Discover Bank incorrect information regarding the Plaintiff's credit worthiness and character, where this information false [sic] and is not part of the Plaintiff consumer file resulting in denial of credit, Equifax wilfully defamed the Plaintiff's character" (Second Amd. Compl. ¶ 439). As this claim is also based on Equifax's alleged FCRA violations, and no discernible independent basis exists in the complaint, amendment to add this defamation claim is **DENIED**.

### 5.  TRANS UNION CLAIMS.

Finally, this order addresses the allegations as to defendant Trans Union. Trans Union did not move to dismiss along with the other three defendants, but now opposes amendment in joint opposition briefing with defendants LexisNexis and Experian. The Second Amended Complaint now adds factual bases for plaintiff's claims that are unique to Trans Union, namely that plaintiff was dropped from his MetLife insurance policy in 2015. Plaintiff claims he discovered in 2021 that this was due to his MetLife file having been merged with that of Ohio Aaron, a confusion he claims was also reflected in Trans Union disclosures he received in late 2021 (Second Amd. Compl. ¶¶ 201–208). On these pled facts, it is plausible that Trans Union inaccurately reported plaintiff's information to MetLife.

However, some pruning of plaintiff's claims against Trans Union is in order. As discussed above, the Second Amended Complaint seeks to add a FCRA Section 1681h claim over an alleged failure to disclose requested information, even though it is Section 1681g that addresses required disclosures. Because plaintiff states an identical claim under FCRA Section

1681g as to Trans Union, the Section 1681h claim is both redundant and misdirected, which means it would be futile, and so amendment to add that claim is **DENIED**.

As for plaintiff's originally asserted claims against Trans Union, although Trans Union did not initially move to dismiss, "[a] trial court may dismiss a claim sua sponte under Fed.R.Civ.P. 12(b)(6)." *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) (citing *Wong v. Bell*, 642 F.2d 359, 361–62 (9th Cir. 1981)). Plaintiff asserts claims under 42 U.S.C. Sections 1981 and 2000d against Trans Union, which are identical to those dismissed against the other defendants. That is, they plainly state in conclusory fashion that the alleged inaccuracies in CRA files are due to racial animus. Our prior order dismissing such claims against other defendants said as much, and plaintiff merely reasserts them without more in seeking amendment, which is why these claims as to the other defendants remain futile. So too here. Defendant's 42 U.S.C. § 1981 and 42 U.S.C. § 2000d claims are hereby **DISMISSED**. Defendant's amended complaint shall remove all references to such claims.

Likewise, plaintiff's fraud claims against Trans Union are insufficiently pled, as they simply recite the elements of fraud in the prayer for relief (Second Amd. Compl. ¶¶ 411–13). Pursuant to Rule 9(b), there are heightened pleading requirements for fraud claims in federal court, which means "[t]he complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (citations omitted). Identical fraud claims against other defendants had already been dismissed, and on seeking amendment plaintiff continues to tack them on by merely reciting the elements of fraud, which is why the fraud claims against other defendants remain futile. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The substance of plaintiff's complaint continues to be that his files at Trans Union and other CRAs contain inaccuracies, and that these inaccurate files create problems when CRAs provide (or otherwise are unable to provide) credit reports. Nowhere in these facts is there a plausible inference that these inaccuracies are to defraud plaintiff.

Defendant's fraud claims are hereby **DISMISSED**. Defendant's amended complaint shall remove all references to such claims.

* * *

Defendants explain in briefing that the exhibits now attached to the proposed Second Amended Complaint "show that [plaintiff] has what is referred to in the consumer reporting industry as a 'thin file' . . . there is almost no data about him in the files of the defendants" (LexisNexis Trans Union Experian Opp. 10 n.7). The explanation goes on to say:

> It is thus possible that Plaintiff has made a practice of avoiding the creation of data about him that is shared in the credit reporting industry, which obviously would be his right. A "thin file", though, has consequences for consumers. The absence of robust information in a file may make it difficult for consumer reporting agencies to verify identities, or to resolve customer search inquiries to a unique individual so that the consumer reporting agency is confident that the report it delivers in response to an order is that of the correct consumer.

(*ibid.*). While that potentially explains plaintiff's frustrations in obtaining credit, it does not excuse CRAs of their statutory duty to make accurate reports nonetheless. Indeed, in response to an earlier order, Trans Union stated that:

> [I]n response to a dispute received on or about November 4, 2021 – which did not include a middle name, date of birth or Social Security number – a Trans Union agent mistakenly sent Plaintiff a consumer disclosure for a different consumer named Aaron X. King from Ohio, because the agent was unable to locate the correct file based on the information provided.

(Trans Union Resp. ¶ 3, Dkt. No. 48). In the interest of moving this action forward expeditiously, Trans Union and plaintiff **SHALL MEET AND CONFER** to understand: (1) whether any inaccuracies exist as to the credit file provided by Trans Union to plaintiff on April 19, 2023, pursuant to a prior order (Trans Union Resp. ¶ 1); (2) what, if any, information plaintiff could provide to CRAs such that his files would be less difficult for identity verification and search inquiry purposes; (3) whether Trans Union provided any disclosure to MetLife since 2015 that could have resulted in plaintiff's policy being changed. The parties shall file a joint statement summarizing that discussion by **FEBRUARY 7, 2024**.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion for leave to amend the complaint as to defendants LexisNexis, Experian, and Equifax is **DENIED**. Plaintiff's motion for leave to amend the complaint as to defendant Trans Union is **GRANTED**, but only as to the newly-pled facts regarding plaintiff's MetLife policy and the FCRA claims against Trans Union. Plaintiff shall have **TWENTY-ONE CALENDAR DAYS** from the date of this order to file the amended complaint, which as the foregoing explains shall contain only FCRA claims against Trans Union. References to dismissed plaintiffs and claims shall be removed. No new claims or facts shall be added.

**IT IS SO ORDERED.**

Dated: November 23, 2023.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE